DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF WYOMING

[OCTOBER TERM, 1911.]

### GUSTIN v. HARTING.
### (No. 661.)

TRESPASS—DESTRUCTION OF IRRIGATING FLUME—EVIDENCE—PROOF OF
TITLE TO INJURED LAND—PROOF OF WATER RIGHT—ADJUDICATION
OF WATER RIGHT PRIORITIES—RECORD OF PROCEEDINGS AS EVIDENCE
—EASEMENT—PAROL LICENSE—ABANDONMENT—ADVERSE POSSES-
SION—PRESCRIPTION—LIMITATION OF ACTIONS—PAROL LICENSE,
WHEN IRREVOCABLE—RIGHT OF WAY FOR IRRIGATION DITCHES AND
FLUMES—EMINENT DOMAIN—CONSENT TO OCCUPANCY, EFFECT OF.

1. In an action for damages to growing crops, plants and trees
   caused by defendant's destruction of a flume used to con-
   vey water for the irrigation of plaintiff's land, it ap-
   peared that plaintiff had resided on said land with his
   family for 31 years, and had built a fence inclosing it, and
   no attempt was made to show a title superior to that of
   plaintiff, or that any other person had or claimed any
   interest in the land. *Held*, that under such circumstances
   it was not necessary for the plaintiff to prove record or
   paper title.

2. Where it appears that a proceeding in a district court for
   the adjudication of the priorities of right to the use of
   the water of a natural stream, resulting in a decree in 1888

establishing the various rights and priorities, was conducted, and that therein the priorities and rights were adjudicated, in conformity to the statute then in force, the record thereof is competent and relevant to show a water right·thereby adjudged, in connection with evidence identifying the land or purpose to which the water found to have been appropriated was applied; and such record and decree was sufficient, at least in the absence of a showing tending to overcome the effect thereof, to show plaintiff's water right in an action for damages for the loss of growing crops through defendant's destruction of a flume used to convey water for the irrigation of plaintiff's land, if anything more in that respect was required to be shown in such an action than the fact of plaintiff's use of the water for such irrigation during a period of more than 30 years.

3. In an action for damages to growing crops caused by the destruction of a flume conveying water to plaintiff's land for irrigation the evidence as to plaintiff's water right examined and *held* to show that such water right for the tract of land in controversy had not been lost upon mortgage foreclosure.

4. In an action for damages to growing crops caused by defendant's construction of a flume located on his land but used to convey water to plaintiff's land for irrigation, plaintiff claimed the right to maimtain the flume upon defendant's land through the consent of the then owner of the land when the flume was first built, and the consent of defendant to the rebuilding of.the flume in a slightly different location. *Held,* that the difference between the location of the first flume and the second which replaced it was not sufficient to operate as an abandonment of the right acquired by plaintiff through the consent of the owner to the building of the first flume; and that if such difference in the location of the flume might have been deemed material under other circumstances, the consent of defendant to the building of the second flume in the location where it was built would preclude him from disputing plaintiff's right to maintain the flume upon the ground that its location differed· from that of the first flume.

5. In an action for damages to crops caused by the loss of water for their irrigation through the destruction by defendant of a flume upon his land but used by plaintiff **to**

convey water to his land, the plaintiff claimed the owner-
ship of the flume and that he had acquired the right to
maintain it by prescription. *Held,* that an effort made by
plaintiff to secure a deed from defendant of a right of way
for the flume did not amount to a confession that such
right of way had not been previously acquired, or an
abandonment of any claim based upon the construction
and use of the flume, since the evidence justifies the con-
clusion that the effort to obtain the deed was prompted by a
desire to secure written evidence of a right and title al-
ready claimed, and the belief that if he gave a deed the
defendant would not further disturb plaintiff in such
right.

6. No offer to purchase after the statute has fully run will
bar the claim of adverse possession, unless the relation of
vendor and vendee under a contract to purchase, or of
landlord and tenant, once existed between the parties.

7. The actual and continuous use of an easement, as of right,
for the period of limitation for bringing an action to dis-
posssess the claimant, creates the presumption of a grant.

8. The right acquired by the parol consent of a landowner to
the building of a flume upon his land, will not ripen into a
title by prescription, no mater how long continued, if the
right so given was and remained merely permissive so as
to be revocable at any time by the landowner; but when
such parol consent has been given to use the land as if
legally conveyed, the use will then be as of right, which,
if continued for the requisite period, may develop into a
prescriptive right.

9. By statute enacted in 1886 an action to recover title or pos-
session of lands can only be brought within 10 years after
the cause of action accrues. By the statute previously in
force the limitation was 21 years, and the limitation of the
present statute was expressly declared not to apply to
cases wherein the right of action had already accrued, but
that as to such cases the statute in force when the right
of action accrued should apply. The plaintiff claimed the
right to maintain a flume upon defendant's land through
the parol consent of its then owner when the flume was
built prior to the enactment of the statute of 1886. *Held,*
that the case did not come within the exception, but was
controlled by the shorter period of limitation prescribed
in the statute of 1886, for the reason that, even if the parol
consent or license was revocable, it had not been revoked

when the statute was enacted and went into effect, and hence the right of action had not then accrued.

10. It is not necessary in this state that adverse possession be founded upon color of title.

11. Where the use of a flume built with the parol consent of the landowner has been actual, open, notorious, exclusive, and continuous for more than 10 years, it is sufficient to establish a right to maintain the flume upon land by prescription, unless it was built under a mere revocable license without any proper claim of a hostile right.

12. A flume having been built by the parol consent of the landowner to connect with an irrigating ditch already on the land to conduct water to the adjoining land of the licensee for its irrigation, and the licensee, relying upon such consent to build the flume, had not only built that structure, but each year thereafter for a period sufficient to establish a right by prescription had prepared his land for cultivation, and grain, vegetables, plants, and fruit trees were growing thereon when the flume was destroyed by one who had succeeded to the title to the land upon which it was located; *Held*, in an action for damages caused by such destruction of the flume: (1) That since it did not appear that the license resulting from the consent of the landowner was restricted as to time by anything that was said when the consent was given, what the parties contemplated as to the duration of the license must be determined by reference to its character and purpose. (2) That since the license was to build a flume to carry water for the irrigation of land, an object usually permanent in its nature, except as dependent upon the water supply, and the licensee was one of the owners of the ditch upon the licensor's land with which the flume was to be connected and of a right of way for that ditch, as well as a water right, it may reasonably be assumed that an unlimited or permanent occupation and use was within the contemplation of the parties, such as might lead in time not only to a prescriptive right, but would render the license irrevocable, in case of the expenditure of money in good faith by the licensee in execution of the license and relying upon it. (3) That in view of the fact that the licensee might have obtained the right of way by condemnation, in connection with the other facts, the parol consent given generally without limitation or reservation must be regarded as absolute and as conferring a per-

manent right, so that the use would be as of right, capable of ripening into a prescriptive title. (4) That the facts having been determined by the jury in favor of the showing made by plaintiff, the license was irrevocable, and the use was under a claim of right, giving the plaintiff a right by prescription to maintain the flume.

13. Where one consents to the occupation of his land by another possessing the power of eminent domain for the purpose of such occupation, without either requiring payment by agreement, or proceedings to condemn, and allows the party entering to go on and expend money and labor to complete the proposed work, he will be regarded as having acquiesced therein, and is therefore estopped from maintaining either trespass or ejectment, and is restricted to a suit for damages.

14. Where one has a parol license to build a flume upon another's land which would be irrevocable in equity there can be no reasonable objection to a recovery of damages for the destruction of the flume, in an action therefor, where, as in this state, law and equity are administered in the same court, and the distinctions between actions at law and suits in equity, and the forms of all such actions and suits formerly existing are abolished, for which is substituted one form of action known as a "civil action"; but whatever the proper rule in such case, a title by prescription is sufficient to support the action.

[Decided February 17, 1912.]          (121 Pac., 522.)

Error to the District Court, Fremont County; Hon. Charles E. Carpenter, Judge.

The material facts are stated in the opinion.

*Stone & Winslow,* for plaintiff in error.

Plaintiff failed to show sufficient title to his land to authorize a recovery, all that was shown being his occupancy of the tract in question. The plaintiff also failed to establish any right of way for a ditch or that he had any appropriation of water. The contention of the plaintiff in error, defendant below, is that the flume was used jointly under a permission or license but without any right of way or ownership by Harting, the plaintiff below; and that the permission for the use of the flume by Harting was under an

agreement giving to the plaintiff in error the use of the main
ditch. A ditch is real estate, and a conveyance of it must
be in writing. (Wiel on Water Rights, Secs. 150, 222;
Clark v. Willett, 35 Cal. 534; Barber v. Mooney, 87 Pac.
556; Whalon v. Canal Co., 11 Wyo. 313.) After title has
passed from the Government the land can be burdened with
a right of way for water only by consent of the owner or
by condemnation proceedings. (Wiel on Water Rights,
Sec. 151.) A ditch is more than a mere excavation; it
must be connected with a good and sufficient water right
before it is technically a ditch. (Whalon v. Canal Co.,
·supra.) Working upon, cleaning out and using an irriga-
tion ditch is not itself sufficient to vest title. One cannot
arbitrarily use another's ditch or interest in a ditch and
thereby impair the right or use of the owner. (McPhail
v. Forney, 4 Wyo. 557; Wiel on Water Rights, Sec. 133.)

The proof was wholly insufficient to establish a right in
the plaintiff by prescription or adverse user. If the user
begins under a license, and the nature of the use never
changes, no prescriptive right will be acquired. (Farnham
on Waters, Secs. 1800, 2367; Lane v. Miller, 27 Ind. 534.)
The use must be continued for the statutory period, ex-
clusive, open, under claim of right (color of title), hostile,
and an invasion of the right of the other which the latter
might have prevented. (Wiel on Water Rights, Secs. 234-
248; Butler v. Smith, 84 Neb. 78.) The evidence shows
repeated efforts by the plaintiff below within the statutory
period to obtain by purchase the right of way for the flume.
Thereby the plaintiff below recognized the superior title in
the defendant, and made it impossible for him to claim ad-
verse possession or user. (Irr. Co. v. Fulton (Utah) 65
Pac. 205.) Where one enters possession of the property
by the owner's permission without any tenancy except at
sufferance, possession being given merely as a matter of
favor, title by adverse possession cannot be acquired against
the true owner, unless there is a clear, positive and un-
equivocal disclaimer, disavowal of the owner's title, and

the assertion by the occupant of the title in hostility thereto, notice thereof being brought home to the true owner. (12 L. R. A. (N. S.), p. 1140, note; 22 Ency. Law, 1195-96.) Use of water below the place of the claimed easement will not establish an adverse title. (Wiel on Water Rights, p. 380, 357; Canal Co. v. Burnam, 147 N. C. 41.)

Where the evidence produced by a party is insufficient in law to authorize a finding in his favor a peremptory instruction should be given in favor of his adversary. (Boswell v. Bank, 16 Wyo. 161.)

*W. E. Hardin,* for defendant in error.

Title by prescription may be shown under a general allegation of ownership. (Montecito Co. v. Santa Barbara, 77 Pac. 1113; Lakeside Co. v. Crane, 22 Pac. 76.) A right of way for an irrigation ditch and flume may be acquired by a gratuitous license of the landowner, and after entry and expenditure of money thereon the license becomes irrevocable. (DeGraffenreid v. Savage, 47 Pac. 902; Maple Orchard &c. v. Marshall, 75 Pac. 369; Tynon v. Despain, 43 Pac. 1059; Turner v. Stanton, (Mich.) 4 N. W. 402; Marble v. Whitney, 28 N. Y. 297.)

The right to the use of the water of Baldwin Creek for irrigation through the Harting and Sharp Ditch and its branches had its original support in the Act of Congress approved July 9, 1870. Upon the refusal of an owner to permit a ditch to run through his land a right of way may be condemned, and the statutes of Wyoming Territory gave that right at the time the main ditch and flume in question were originally constructed. A clandestine tearing down of the flume in the night time by stealth and without the knowledge of plaintiff as to the one who did it is not sufficient to destroy adverse possession. (Britain v. Cronn, 91 Pac. 458.) Any visible act which demonstrates an intention to claim ownership and possession is sufficient to establish adverse possession. The mode of use and enjoyment of the flume and lateral for thirty-two years determined the right of Harting to maintain the same. (Guernsey v.

Antelope Creek, 92 Pac. 326; Knight v. Cohen, 93 Pac. 396.) The offer to purchase after the statute has fully run will not bar claim of adverse possession. (Coventon v. Seufert, 32 Pac. 508.) The use of the flume by permission does not affect the prescriptive right so long as it has been used and exercised for the requisite period under a claim of right. If the use of the right were under parol consent to use it as if it were legally conveyed it became a use as of right. (Gould on Waters, 338; Washburn on Easements, 127; Wiel on Water Rights, (2nd Ed.), Sec. 238.)

In many respects the testimony on the part of the defendant is inconsistent, and the jury very properly found the facts in favor of the plaintiff below. When the defendant purchased the land upon which the ditch was located and the flume and lateral runs, and took possesion thereof in 1887, he is presumed to have bought with notice of the rights of plaintiff in the premises. (Coffman v. Robbins, 8 Ore. 278.) An attempt to convey a water right by an imperfect deed operates as an abandonment of the title obtained by the appropriator thereof. (Barkley v. Tieleke, 2 Mont. 34.) If a deed recites two descriptions of property, one of which sufficiently identifies it, but the other fails in fact, the false description should be rejected as surplusage. (Reed v. Spicer, 27 Cal. 57.)

POTTER, JUSTICE.

This action was brought in the District Court in Fremont County by Henry Harting against Edward A. Gustin to recover damages alleged to have been sustained through the destruction by defendant of a flume that had been used in connection with certain ditches for the purpose of conveying water appropriated by the plaintiff for the irrigation of a nine-acre tract of land situated in the southeast corner of the northwest quarter of the northeast quarter of Section 12 in Township 33 North Range 100 West of the Sixth principal meridian.

The petition alleges that before and at the time of the injury complained of the plaintiff was one of the joint owners

of an irrigating ditch taken out of Baldwin Creek known as the "Harting & Sharp" ditch, and referred to as the main ditch, and a right of way for said ditch through certain lands of defendant, and also of the proportionate right to the use of water through said ditch for the irrigation of the plaintiff's land above mentioned, which is described in the petition by metes and bounds. It is further alleged that the plaintiff was the joint owner of a certain lateral ditch commonly known as the "Fosher & Harting" ditch, and of a certain flume connecting said main and lateral ditches, together with a right of way for said flume and lateral ditch across the said lands of defendant; and that on the 7th day of August, 1908, the defendant wrongfully, wantonly, willfully and maliciously destroyed and removed said flume, whereby the plaintiff was deprived of the use of the water for the remainder of the irrigating season, and the crops, vegetables, plants and trees, which were growing upon the plaintiff's said land were greatly burned, injured and damaged. The answer is a general denial. The jury impaneled in the case returned a general verdict for the plaintiff and assessed his damages in the sum of $460. Thereupon a judgment for the amount of the verdict was rendered in favor of the plaintiff. Upon the hearing of defendant's motion for new trial an order was entered sustaining the same unless the plaintiff should file a remittitur in the sum of $230; and thereafter, such remittitur having been filed, the motion for new trial was again heard and overruled, and the judgment for the reduced amount allowed to stand. The defendant brings the case here on error.

It appeared upon the trial that the defendant was the owner of all the quarter section of land above referred to except the plaintiff's nine-acre tract; and that he had acquired the title thereto in October, 1886, under an execution sale upon a judgment rendered in his favor against Amos Gustin, the former owner of the land. It also appeared that the Harting & Sharp ditch, or the "main ditch" as it is called, runs across a part of defendant's land in a south-

easterly direction from a point near the northwest corner thereof; that the flume in question connected with that ditch on defendant's land and was constructed across a hollow or swale to the lateral ditch mentioned in the petition; and that for many years the plaintiff's land aforesaid was supplied with water for its irrigation through said ditches and the said flume or others replaced by it. The fact that defendant had destroyed the flume at or about the time alleged was established by the plaintiff's evidence and was admitted by the defendant in his testimony. No question was raised upon the trial as to the main ditch or the right of way therefor across defendant's land, but that the plaintiff had any such interest in the flume or right to maintain it as entitled him to damages for its destruction was and is disputed, and the questions here presented relate principally to that matter. There are, however, some preliminary questions suggested by counsel for defendant, plaintiff in error here, affecting the right of recovery, which will first be disposed of.

1.   It is contended that the plaintiff below failed to prove in a competent manner his ownership of the land claimed by him so as to authorize a recovery of damages for the loss of water for its irrigation. The fact is not disputed in the evidence that at the time of the alleged injury and for many years prior thereto the plaintiff lived upon and was in actual possession of the land. The plaintiff testified that he had built a fence enclosing and had resided on the land with his family for thirty-one years; and his testimony in that respect is amply corroborated by other evidence. No attempt was made to show a title to the land superior to that of plaintiff, or that any other person had or claimed any interest in it. Under such circumstances it was not necessary for the plaintiff to prove paper or record title. (Chicago B. & Q. R. Co. v. McPhillamey, (Wyo.) 118 Pac. 682.) The rule is stated in McNarra v. Ry. Co., 41 Wis. 69, where the suit was for damages for the destruction by fire through negligence of rails, timber, fencing, grass and

hay upon certain land. The court say: "In this case the plaintiff showed himself in actual possession of the land at the time of the injury, and the defendant did not show, or attempt to show, any outstanding adverse title thereto. Hence the plaintiff's possession was sufficient to sustain the claim, and he was not required to show a higher or better title." And in Gilland v. U. P. Ry. Co., 6 Wyo. 185, this court said: "Permanent injury to the soil does not seem to be alleged or claimed, the only injury complained of is the burning of the grass. Possession in such case is sufficient to authorize a recovery."

2. It is contended that the plaintiff failed to show a water right for the irrigation of his lands. It was shown that for a period of more than thirty years continuously during the irrigating seasons, and from a time several years prior to the admission of Wyoming as a state and the enactment of the law requiring an official permit for the appropriation of water, the plaintiff had used water from Baldwin Creek conveyed through the said main ditch and the connecting flume for the irrigation of his said land. He also introduced in evidence the petition and certain other papers and the judgment or final order in a proceeding heard and determined in the district court of Fremont County for the adjudication of the priorities of right to use water for beneficial purposes on Baldwin Creek. From said papers it appeared that the proceeding was instituted by petition filed July 14, 1887, by the plaintiff Harting and one John R. McLaughlin, as the owners of the Harting and Sharp ditch; that the defendant Gustin upon his own application became a party to said proceeding; and that upon a final hearing an order was entered by the court on July 18, 1888, establishing the various rights and priorities to the use of the water of said Baldwin Creek, whereby it was adjudicated that the petitioners McLaughlin and Harting, as the joint owners of the Harting & Sharp ditch, had the first right to the use of said water in a certain specified amount by reason of the original construction of the ditch

in 1875, and the twelfth right in point of priority for another specified amount by reason of the enlargment of the ditch in 1884. This record was admitted over the objection of the defendant. The proceeding appears to have been conducted and the priorities or rights adjudicated strictly in conformity to the statute then in force, and the record thereof is clearly competent and relevant for the purpose of showing a water right thereby adjudged, in connection with evidence identifying the land or purpose to which the water so found to have been appropriated was applied. If anything more was required in an action of this kind to show a water right in the plaintiff than the evidence as to his use of the water for the period and under the circumstances above mentioned, the record of the proceedings and decree aforesaid was clearly sufficient, at least in the absence of a showing tending to evercome the effect thereof.

3.  It is further contended that whatever water right or interest the plaintiff may have had was lost upon mortgage foreclosure in 1897 or 1898. The evidence does not support that contention. The only evidence on the subject is found in the cross-examination of the plaintiff, whereby it appears that he had mortgaged to Abe Fosher, or perhaps Fosher & Earle or Fosher Brothers, a tract of 120 acres of land, which we understand adjoins the nine-acre tract, and enough interest in the Harting & Sharp ditch to cover the land mortgaged; that afterwards the mortgage was foreclosed, and Abe Fosher individually, or Fosher & Earle thereby acquired the title to the mortgaged property. But the plaintiff testified in substance and positively that before and after the foreclosure he owned a sufficient interest in the ditch in addition to the interest covered by the mortgage to irrigate his remaining nine acres. We do not find the mortgage, the foreclosure proceedings, or the sheriff's deed in the record, and it does not appear that either was offered in evidence. It is clear that plaintiff's testimony does not authorize the conclusion that his entire

interest in the ditch passed by the mortgage. On the contrary it shows that he retained a sufficient interest for the irrigation of his nine acres. Moreover, his testimony to that effect seems to be corroborated by the fact that after the foreclosure he continued to use the ditch and sufficient of the water conveyed through the same for the irrigation of the nine-acre tract; and there is other evidence clearly showing a recognition of his right to do so by Fosher and Earle.

4. As above stated the plaintiff alleged that he was a joint owner of the flume and of a right of way therefor upon the land of defendant. The denial of that allegation presented the chief issue in the case. The instructions indicate that the right of recovery was maintained upon the theory that the plaintiff had acquired the right of way for the flume by prescription; and it is here contended by counsel for plaintiff below that such right was established by the evidence, and also that the flume had been constructed by the plaintiff under an irrevocable license. The evidence in relation to this matter is in some material respects conflicting, but it is evident that the jury found upon the facts in accordance with the showing made by the plaintiff's evidence, which was clearly sufficient to sustain such a finding. The question to be here considered therefore, is whether the facts so found entitled the plaintiff to recover. In stating the facts a brief reference will be made to the conflicting claims of the parties as shown by the evidence, for the purpose of explaining what we understand to be the effect of the verdict respecting the same.

It is not disputed that from the time of the construction of the flume in question the plaintiff irrigated his nine acres of land with water which ran into and through the flume from the Harting & Sharp ditch; and that through that flume or another replaced by it and located in the same or substantially the same place the plaintiff had for a period of about thirty years irrigated his land and also from about the year 1879 until 1897 an adjoining tract of one

hundred and twenty acres then owned and occupied by him. He seems to have lost the title to the tract last mentioned by mortgage foreclosure in 1897, together with a proportionate interest in the main ditch and flume, but, as shown above, he retained sufficient of whatever interest he previously had in the ditch and flume to irrigate his remaining nine acres.

There is a direct conflict in the evidence as to when and by whom the flume was built, and incidentally as to the number of flumes that had been built and used for the purpose aforesaid. The defendant testified that the flume destroyed was built by him in 1892, and that under a verbal agreement allowing him to run water through a portion of the Harting & Sharp ditch he permitted the plaintiff to use the flume. And it appears that the defendant had constructed a branch flume from about midway of the flume in question to a ditch upon some of his land lying south thereof, and that to irrigate such land he diverted the water from the main flume into his branch flume and connecting ditch. . It appears also that a few days before the defendant destroyed the flume he had been notified in writing by the plaintiff and the other partes claiming to own the main ditch not to take water from any of their ditches, nor to put any waste water therein. Plaintiff's evidence with reference to the defendant's said use of the ditch and flume is confined to statements that they were so used without attempting to explain whether or not there was any agreement therefor. But the agreement testified to by defendant is contradicted in effect by the plaintiff's evidence presently to be stated showing that the plaintiff and those interested with him, and not the defendant, built the flume, and that plaintiff used it under a claim of right as one of its owners. The court instructed the jury that if they found that the plaintiff and defendant used the flume jointly under a mutual agreement made in 1892 with plaintiff who used the flume in consideration of permission granted to the defendant to carry certain water through the Harting & Sharp ditch to be

taken out through the flume, and that the plaintiff rescinded and revoked such agreement and notified the defendant to discontinue the use of the ditch then such notice would be sufficient to abrogate the mutual agreement and would terminate any rights of the plaintiff thereunder. It is evident that the jury did not find any such agreement to have been made, or that the defendant had built or owned the flume; but that they found, on the contrary, that plaintiff was a joint owner of the flume and used it as such joint owner without any permission of the defendant, except so far as the defendant may have consented to the building of the flume upon his land. There is some evidence on the part of the defendant, mostly indirect and circumstantial, tending to corroborate his testimony respecting the time when the flume was built, but, as suggested, the evidence on the part of the plaintiff was amply sufficient to support a different conclusion.

The showing made by the plaintiff's evidence in relation to the building of the flume and the right to do so is to the effect that the one destroyed was built in 1903 by the plaintiff and Fosher & Earle, replacing a former one located in the same place which had become in bad condition, and which had been built by the plaintiff for his own use about the year 1892; that about thirty years before the time of the trial the plaintiff had built a flume in substantially the same place with the express verbal consent of Amos Gustin, then in possession of and claiming the land; and that he used such flume in connection with the main ditch continuously until the second flume was constructed to take its place about 1892. There is no contradiction of the plaintiff's testimony respecting the fact and the time of building the first flume and the consent thereto of Amos Gustin; but the defendant admitted in his testimony that such flume was there when he became the owner of the land, and we do not understand the evidence to show that he made any claim to that flume or any objection to its use by the plaintiff. The plaintiff also testified generally without relating any conversation occurring

at the time that the defendant gave him a right to put in the
second flume. It appears, however, that from time to time
after the building of the second flume the defendant caused
the plaintiff some trouble about it, though the nature thereof
is not disclosed other than by general statements of the plain-
tiff indicating that the defendant made him trouble and would
tear out the flume in the night time, and a mere reference in
the evidence to the fact that there had been a law suit about
it. There is some difficulty in reconciling the statement of
the plaintiff that the defendant would tear out the flume in
the night time with the remainder of his testimony and that
of his other witnesses as well as that of the defendant and
his witnesses, for it does not appear therefrom that the flume
had been rebuilt between the years 1892 and 1903. Indeed,
as above stated, the defendant claimed that the flume built in
1892 was the one destroyed; and the plaintiff and other wit-
nesess in his behalf mentioned the building of only three
flumes. The parties do not seem to have deemed it necessary
to bring out a clearer explanation of the manner in which
the defendant may have interfered with the flume or dis-
turbed the plaintiff in the use of it prior to its complete de-
struction in 1908, and we shall not therefore regard the mat-
ter as material except to show that the plaintiff and defend-
ant had occasional difficulty with reference to the flume or
its use.

The testimony of the plaintiff concerning the building of
the first flume and the right given him to build it upon the
land now owned by the defendant is as follows: "The first
flume I put in, I think it is thirty years ago; I think along
there. I got a right from Amos Gustin, the first one I put in.
I asked him if I could put a flume in there. He told me yes,
to put it any place I wanted to put it. I turned around and
put in the flume across the hollow there." There appears to
have been a slight difference between the location of the first
flume and the second which replaced it, but not sufficient, we
think, to operate as an abandonment of any right acquired
through the consent of the owner of the land to the building

of the first flume.  But even if the difference in the location
of the two flumes might have been deemed material under
other circumstances, it would seem that the consent of the
defendant to the building of the second flume in the location
where it was built would preclude him from disputing the
right to maintain the flume upon any such ground.  It fur-
ther appears that at least on two occasions there were nego-
tiations between the parties for the purpose of avoiding fur-
ther difficulty about the flume.  According to the plaintiff's
testimony, and that of another witness tending to corroborate
it, the plaintiff in 1899 or possibly 1900 proposed to the de-
fendant that he would give him two pigs for the right of way
for the flume, and that the defendant accepted the pigs as
compensation for such right of way.  Again in 1901, the de-
fendant and his wife executed a deed to Fosher & Earle and
Henry Harting, the plaintiff, reciting a consideration of five
dollars, purporting to convey to the grantees named a right
of way and easement for a lateral irrigation ditch over and
across a certain quarter section of land, beginning at a point
on the Harting & Sharp ditch specifically described by refer-
nece to its distance and direction from the northwest corner
of the defendant's land; the deed providing that the grant-
ors reserved and should have a right jointly with the grantees
to convey water in said ditch.  Before that deed was pre-
pared and executed Fosher & Earle, for themselves and
Harting, had the line of the flume and the lateral ditch con-
necting therewith surveyed, and the evidence on behalf of
the plaintiff goes to show that it was intended by the deed to
grant the right of way for the flume.  The defendant testi-
fied that the deed was intended to grant the right of way for
another ditch to be constructed by the grantees and that such
ditch was never constructed.  So far as this conflict in the
evidence is concerned it was a matter for the jury to deter-
mine, if material, what the intention was.  But it appears
that a mistake was made in the surveyor's notes which led to
an erroneous description of the quarter section upon which
the right of way was intended to be granted, and also an in-

correct description of the point of commencement of the right of way, so that it would be impossible from the description to locate such point upon the line of the Harting & Sharp ditch. The deed was introduced in evidence by the defendant, not for the purpose of showing the granting of a right of way, as counsel for defendant explains, but to corroborate the defendant's testimony to the effect that the agreement for the deed did not have reference to the continuance of the flume, but to the construction of a new ditch. The effect of the plaintiff's evidence concerning the reason for the proposal and the negotiations for the deed is that as the defendant had merely given his word consenting to the right of way, and was inclined to give the plaintiff and those interested with him some trouble about the flume from time to time, they deemed it better to secure a deed from him as a preventive measure against further difficulty.

It is suggested that the attempt to secure a deed from the defendant for the right of way, if for the flume as claimed by the plaintiff, amounted to a confession that no right of way had been previously acquired, or an abandonment of any claim based upon the construction and use of the flume. But we think the evidence sufficient to justify the conclusion that the negotiations for the deed on the part of the plaintiff and those interested with him were prompted by a desire to secure written evidence of the right and title already claimed, believing that then the defendant would not be inclined to further disturb them in such right. As said in Coventon v. Seufert (Or.) 32 Pac. 508, "No offer to purchase after the statute has fully run will bar the claim of adverse possession, unless the relation of vendor and vendee under a contract to purchase, or of landlord and tenant, once existed between the parties." The evidence as to the deed was proper to be considered in determining whether the flume had been built and maintaind by the plaintiff under a claim of right in good faith; but the fact that such a deed was negotiated for is not to be regarded as conclusive against the existence of a right of way previously claimed or acquired. It was within the

province of the jury to determine not only what the intention was in procuring the deed to be executed, but also whether the plaintiff was claiming in good faith a right to build and maintain the flume. The same may be said as to the transaction shown by plaintiff's testimony to have occurred between him and the defendant in 1899 or 1900, in which the defendant accepted two pigs for the right of way.

Upon the facts in the case, the propositions that the plaintiff had acquired a right of way for the flume by prescription, and also the right to maintain it under an irrevocable license are so connected that it is necessary to consider them together. The actual and continuous use of an easement, as of right, for the period of limitation for bringing an action to dispossess the claimant creates the presumption of a grant. In this case the plaintiff has disclosed the source of his right, viz: the parol consent of the landowner to the building of the flume. If the right so given was and remained merely permissive so as to be revocable at any time by the landowner, it would not ripen into a title by prescription, no matter how long continued, for then the possession or use would not be hostile or adverse. But if the parol consent was given to use the land as if legally conveyed, the use would then be as of right, which, if continued for the requisite period, might develop into a prescriptive right. (Gould on Waters, sec. 338; Stearns v. Janes, 12 Allen, 582.) Under our statute enacted in 1886 an action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten years after the cause of action accrues. By the statute previously in force the limitation as to such an action was fixed at twenty-one years; and by express provision of the present statute the limitation thereby prescribed was not to apply to cases wherein the right of action had already accrued, but the statute in force when the right of action accrued was declared to be applicable to such cases. The facts here do not bring the case within the exception, for the reason that even if the parol consent or license was revocable it had not been revoked when the statute

now in force went into effect, and hence a right of action had not accrued.

It does not appear that prior to 1892 there had been the slightest interference with the use of the flume and right of way by the plaintiff, but his use appears to have been actual, open, notorious, exclusive and continuous for more than ten years, to say nothing of the use after 1892. It is clear, therefore, that such use is sufficient to establish a right by prescription, unless the flume was built and maintained under a mere revocable license, without any proper claim of a hostile right. In this state, as held in Bryant v. Cadle, 18 Wyo. 64, it is not necessary that adverse possession be founded upon color of title. The right of way for the main ditch is not questioned. Indeed from the rather meager evidence on the subject that ditch seems to have been located and built before Amos Gustin settled upon or acquired the land, and when it was public land of the United States. That the plaintiff might use and preserve his right in the main ditch he secured the consent of the owner of the land on which it was located to build a flume connecting with it, so as to conduct the water upon his adjoining land; and thereby he was enabled to irrigate and cultivate his land. Relying upon the consent to build and maintain the flume, he not only built that structure, but during the year in which it was destroyed, as well as in previous years, he had prepared his land for cultivation, and grain, vegetables, plants and fruit trees were growing thereon.

There is much conflict in the decisions respecting the revocability of an executed parol license where the licensee has expended money upon the faith of the license. The authorities on the subject were exhaustively discussed in Metcalf v. Hart, 3 Wyo. 514, which was an action for specific performance involving a license to erect a building upon land of the defendant, and the conclusion was reached that it is impossible to lay down a general rule enforceable in all cases, but that a license by parol when executed and after expenditures have been made may or may not be revocable, depending

upon the circumstances; and that where the circumstances are such that a revocation would amount to actual or constructive fraud, equity will afford relief to prevent such revocation.    And it was said that if the parties cannot be placed in *statu quo* a revocation would be either actual or constructive fraud.    It was also remarked that even courts of law very extensively recognize the fraud, and some of them remedy it by equitable estoppel, though seemingly the majority of them acknowledge their inability to furnish the appropriate remedy, while suggesting frequently that equity may do so, but in the course of the opinion mention is made of the fact that in states where law and equity are administered in the same court, effect is given at law to the right which equity would enforce in favor of the licensee.    To illustrate the principle adopted it was said: "Cases may arise and have arisen where a license to occupy land has been intended and understood as a mere personal favor to the licensee to give him a place to live, or to occupy for some other beneficial purpose not transmissible, but revocable at will. Then expenditures would naturally be made accordingly. In other cases the granting of the license has been in terms an assurance of permanent possession.    It is evident that the same rule cannot apply to both classes of cases.    The revocation of the license, even after expenditures made in consequence of it, in the one case is a right, in the other a fraud."

In the case of Maple Grove &c. Co. v. Marshall, (Utah) 75 Pac. 369, it appeared that pursuant to a parol license a party had built a flume upon another's land, and afterwards replaced it with pipe, for the purpose of carrying water to irrigate the land of the licensee.    A purchaser of the land on which the pipe line was located entered on the right of way, tore up the pipe, and prevented the water from flowing upon the land of said licensee.    The court say: "To permit a revocation under such circumstances would be a fraud upon the licensee, because the parties would not be placed in *statu quo* after the license has become executed.    This fact that the parties cannot be placed in *statu quo* is of itself sufficient

to induce a court of equity to enjoin the licensor from committing any act which will prevent the licensee from securing the benefits of the expenditures made on the faith of the license. * * * * * Where, as in this instance, the license results in or induces the construction of a flume or pipe line, it amounts to a grant of a right of way for the same, and confers upon the licensee the privilege to enter upon such right of way, after the license has become executed, for the purpose of repairing, maintaining and operating the flume or pipe line."

The principle that a parol license when executed by the expenditure of money or labor, if not given for a mere temporary purpose, becomes irrevocable has been recognized and applied in several other cases involving the building of irrigating ditches or other irrigating works. (1 Weil on Water Rights (3rd Ed.) pages 600-602; Arterburn v. Beard, 86 Neb. 733; Coventon v. Seufert, (Or.) 32 Pac. 508; Stoner v. Zucker, 148 Cal. 516, 83 Pac. 808; Flickinger v. Shaw, 87 Cal. 126, 22 Am. St. 234; De Graffenried v. Savage, (Colo.) 47 Pac. 902; Tynan v. Despain, (Colo.) 43 Pac. 1039.) And in other cases where the license was for the construction of a dam, aqueduct, drain, or the like. (Rerick v. Kern, 14 S. & R. (Pa.) 267, 16 Am. Dec. 497; Clark v. Glidden, 60 Vt. 702; Ferguson v. Spencer, 127 Ind. 66; School Dist. v. Lindsay, 47 Mo. App. 134.)

A leading case on the subject of the revocability of an executed parol license is Rerick v. Kern, supra, which was a suit in Pennsylvania to recover damages for the removal of a structure which had been erected on defendant's land to turn the water of a stream into a different channel, for the purpose of supplying water to a saw-mill built by the plaintiff upon the faith of the license. A judgment for the plaintiff was affirmed. In that state, as remarked in Metcalf v. Hart, supra, there were no chancery courts, and equitable relief was administered in common law actions and through the common law forms. We quote from the opinion at

some length, for it explains the rule applied with great clearness, and has been followed in many cases.

"But a license may become an agreement on valuable consideration; as where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. * * * * A right under a license, when not specifically restricted, is commensurate with the thing of which the license is an accessory. Permission to use water for a mill, or anything else that was viewed by the parties as a permanent erection will be of unlimited duration, and survive the erection itself, if it should be destroyed or fall into a state of dilapidation; in which case the parties might, perhaps, be thought to be remitted to their former rights. But having in view an unlimited enjoyment of the privilege, the grantee has purchased, by the expenditure of money, a right, indefinite in point of duration, which cannot be forfeited by non-user unless for a period sufficient to raise the presumption of a release. The right to rebuild, in case of destruction or dilapidation, and to continue the business on its original footing, may have been in view as necessary to his safety, and may have been an inducement to the particular investment in the first instance. The cost of rebuilding a furnace, for instance, would be trivial when weighed with the loss that would be caused by breaking up the business and turning the capital into other channels; and therefore a license to use water for a furnace would endure forever. But it is otherwise, where the object to be accomplished is temporary. Such usually is the object to be accomplished by a saw-mill, the permanency of which is dependent on a variety of circumstances, such as abundance of timber, on the failure of which the business necessarily is at an end. But till then it constitutes a right for the violation of which redress may be had by action. With this qualification it may safely be affirmed that expending money or labor, in consequence of a license to divert a water course or use a water

power in a particular way, has the effect of turning such license into an agreement that will be executed in equity."

In Clark v. Glidden, supra, it was held that a parol license to lay an aqueduct to a spring of water on one's land is irrevocable during the existence of the aqueduct; that a court of equity will protect the licensee in the use of the aqueduct, and restrain the owner of the spring from interfering with the aqueduct, on the ground of equitable estoppel and that a revocation of the license would operate as a fraud. In Ferguson v. Spencer, supra, a suit for damages caused by interrupting the flow of an artificial stream through, or diverting it from, a tile drain through which water was supplied to plaintiff's animals on .her farm, it was held that the oral agreement under which the drain was constructed on de-fendant's land, having been acted on, had the effect to create a license to revoke which would be a fraud, and the defendant was liable in damages for digging up the drain. In the Missouri case cited above, it was held that a parol license cannot be revoked, when the licensee on the faith of the license with the knowledge of the licensor has expended money and labor in carrying out the object of the license (in the case cited, digging a well to furnish water for a district school), and there need be no consideration going to the licensor. The suit was brought for injunction.

In Stoner v. Zucker, supra, it was held that where one enters on the land of another under a parol license to construct an irrigating ditch, the license, when executed by the construction of the ditch, becomes in all essentials an easement for such length of time as the use itself may continue. .And in the note to the case in 113 Am. State Reports, 301, 305, it is said that though the authorities are conflicting on the proposition whether a license is revocable at will where the licensee has expended money or labor in the execution of it, the doctrine of the case cited would seem on principle to be free from doubt or criticism.

In the Colorado case of De Graffenried v. Savage, supra, the court say: "Here consent was given; no compensation

required; the ditch was constructed, and operated without objection for two years; then the use was forbidden, and the ditch obstructed. Appellant could have required compensation before allowing the entry, and the right, gratuitously granted, under the statute by condemnation; but that was unnecessary. Having waived all right to compensation, and permitted the use for two years, whether appellant could now maintain an action at law, and recover payment for the right of way or damages, is a question not involved, and upon which we express no opinion. But it is clear under all the authorities that appellant could not resort to the summary remedy of obstructing or destroying the ditch, or preventing the parties from entering upon the line of the ditch to operate it." The suit was one for damages and injunction. In Oregon where the landowner wrote to one who asked for a right of way across his land for a ditch saying: "Go ahead, the more ditches you build the better it will suit me," it was held that the correspondence showed that the parties had in mind an easement or right of way for an irrigating ditch, and that the thing granted was not a mere revocable license. (Shaw v. Proffitt, 109 Pac. 584.)

The Nebraska case of Arterburn v. Beard, supra, was brought for an injunction against maintaining a dam, ditches and other parts of an irrigating system upon the plaintiff's land. The court say: "The contention of plaintiff that the defendants have no valid title either by grant or condemnation proceedings, we think cannot be sustained. As to the tracts over which they were given a parol license by the owners to construct their system, when they expended their time and money in the construction of the dam, ditches, flumes, etc., the contract was complete when the work had been performed, and as long as kept up the license was irrevocable. While as to the lands over which there is no proof that the then owner gave permission, and as to which it is shown the defendants took actual possession under a claim of right and over which they have operated for twenty years, the statute of limitations fully protects them against the plain-

tiff's claim. For these reasons, the plaintiff, when he bought the land, took it charged with the easements then held by the defendants, and their title as against him on that account is perfect."

In an early case in Ohio the revocability of a parol license, when executed, was said not to be an open question in that state, and that a parol license executed has been held to be irrevocable, in numerous instances upon the circuit, at law. And it was held that trespass lies against the owner of the freehold, at law, for any wrongful invasion of the possession of the licensee. (Wilson v. Chalfant, 15 O. 248.)

In the case at bar, the license resulting from the consent of the landowner to the building of the flume does not appear to have been restricted as to time by anything that was said when the consent was given. What the parties contemplated as to the duration of the license can therefore only be determined by reference to its character and purpose. Even where the object of the license is not permanent in its nature, when executed by the expenditure of money or labor so that a revocation before the object is accomplished would be actual or constructive fraud, it is irrevocable while that condition continues. But when an unlimited enjoyment is contemplated by the parties, the license becomes in such case of indefinite or permanent duration. (Rerick v. Kern, supra.) The license was for the construction of a flume to carry water for the irrigation of land, an object usually permanent in its nature, except as it might be dependent upon the water supply; and the plaintiff was one of the owners of a ditch upon the licensor's land with which the flume was to be connected, and of a right of way for that ditch, as well as a water right. The flume was therefore but a continuation of the ditch to carry the water appropriated by the plaintiff to his land, and it is not unreasonable to assume that an unlimited or permanent occupation and use was within the contemplation of the parties, such as might lead not only to a prescriptive right in time, but under the conditions mentioned in the authorities cited, would render the license irrevocable.

The plaintiff was authorized by the statutes then in force to acquire a right of way for the flume by condemnation, and this was no doubt understod by the parties. A statute was enacted in 1875 declaring in substance that one owning or claiming land shall be entitled to a right of way through other lands situated between his land and the stream from which it is necessary to secure water for irrigation, and, upon the refusal of the owners to allow the ditch to be constructed over their lands, prescribing a procedure for an assessment of the compensation to be paid such owners. It is true that in Sterritt v. Young, 14 Wyo. 146, decided in 1905, the procedure so prescribed was held to be violative of the constitution on the ground that there was no provision for notice of the time and place of meeting of the appraisers. But it was said that the argument that to so hold would unsettle the title to the right of way of many ditches was not sound, "because if the compensation has been accepted by the landowner it matters not how it was arrived at, and he cannot be heard to complain after having accepted the money." Moreover it does not appear that prior to the bringing of the case mentioned the statute had been assailed as invalid, and the parties may have reasonably acted upon the understanding that the plaintiff not only had the power to acquire a right of way, but that under a valid statutory proceeding he might do so. Following the decision in Sterritt v. Young, a statute was enacted in 1907 for the purpose it seems of curing the adjudged defect in the former statute, prescribing a procedure to be followed by any person, association of persons, company or corporation in exercising the right of eminent domain for reservoirs, drains, flumes, ditches or canals, for agricultural, mining, milling, domestic or sanitary purposes. (Laws 1907, Ch. 52; Comp. Stat. Secs. 3874-3889.) And the constitution of this state recognizes the right of eminent domain in such cases by providing that "private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or

across the lands of others for agricultural, mining, milling, domestic or sanitary purposes." (Art. I, Sec. 32.) It is well settled that where one consents to the occupation of his land by another possessing the power of eminent domain for the purpose of such occupation, without either requiring payment by agreement, or proceedings to condemn, and allows the party entering to go on and expend the necessary money and labor to complete the proposed work, he will be regarded as having acquiesced therein, and is therefore estopped from maintaining either trespass or ejectment, and is restricted to a suit for damages. (Roberts v. Northern Pac. R. Co., 158 U. S. 1; Donohue v. El Paso & S. W. R. Co., 214 U. S. 499; Northern Pac. R. Co., v. Smith, 171 U. S. 260; Donohue v. El Paso & S. W. R. Co., (Ariz.) 94 Pac. 1091; Kakeldey v. Columbia & P. S. Ry. Co., (Wash.) 80 Pac. 205; Taylor v. New Orleans Terminal Co., (La.) 52 So. 562; Water Power Co. v. Chambers, 9 N. J. Eq. 471; 2 Lewis on Em. Domain, (3rd Ed.) Sec. 929 & cases cited in note.) Many cases go further and apply the same rule where the landowner has merely remained inactive and permitted the entry without objection ; and that is the holding of the Supreme Court of the United States in the cases above cited from the decisions of that court.

In view of the power of eminent domain declared by statute, in connection with the other facts in the case, the parol consent given generally without limitation or reservation must be regarded as absolute and as conferring a permanent right, so that the use would be as of right, capable of ripening into a prescriptive title. The facts having been determined by the jury in favor of the showing made by the plaintiff, we conclude as to the legal effect thereof not only that the license was irrevocable, but that the continued use for the period during which an action might have been brought to dispossess the plaintiff was under a claim of right, giving him a right by prescription to maintain the flume. Concerning the matter of the expenditure of money and labor on the faith of the license, we have considered not

alone the expense and labor required in building and maintaining the flume, which in this case was perhaps not large, but also the cultivation and improvement of the plaintiff's land which depended in a great measure, if not entirely, upon the ability to provide water for its irrigation, whereby the value of the land must have been materially enhanced, and without which much of its value would be lost.

In this state, where law and equity are administered in the same court, and the distinctions between actions at law and suits in equity, and the forms of all such actions and suits formerly existing, are abolished, for which is substituted one form of action called a civil action, there can be no reasonable objection to a recovery of damages in an action like the one here brought by a licensee, where the license would be irrevocable in equity. But whatever the proper rule in such case the title by prescription is sufficient to support the action.

Finding no error in the record the judgment will be affirmed.

BEARD, C. J., and SCOTT, J., concur.