## BUTZ v. RICHLAND TP.

A permission, given without consideration by an owner for the use by a township of his land for the discharge across his land of the surplus water of an artesian well sunk by the township on its land for irrigation purposes for the inhabitants of the township, and not given in the form of a grant or conveyance in writing, is a mere license, subject to revocation by the owner or his grantee; a "license," in real estate, being an authority to do a particular act on the land of another without possessing any estate therein, and being founded in personal confidence, revocable at will; and an "easement" being a privilege in land, without profit, existing distinct from the ownership of the land, founded on a grant in writing, within the statute of frauds (Civ. Code, § 1238).

Where a licensee in real estate has acted under the authority given by the licensor, and has incurred expense in carrying out the authority, the license is an executed contract, and equity will not permit it to be revoked.

A township completed an artesian well, sunk for irrigation purposes, for the inhabitants of the township, as authorized by law. Subsequently it obtained, without consideration, a license to discharge across the land of an individual the surplus water. It incurred no expense in exercising rights under the license, and there was no natural water course on the land of the individual along which the waters would naturally flow. **Held**, that the individual or his grantee could revoke the license at will.

(Opinion filed, February 29, 1912.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by Edward L. Butz against Richland Township. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Reversed.

*A. W. Wilmarth,* for appellant.

An estoppel relied upon must be pleaded with particularity and precision, for nothing will be supplied by intendment, and any inference will be against and not in favor of estoppel. Dudley v. Pigg, 149 Ind. 363; vol. 16 Cyc. 806. Facts constituting an estoppel must be especially pleaded in order to be available as a defense. Walker v. Baxter, 6 Wash. 244; Warden v. Baldwin, 51 Wis. 450; Anderson v. Hubbel, 93 Ind. 570; Phillips v. Van Schaick, 37 Ia. 229; Golden v. Hardesty, 93 Ia. 622; Henderson v. Kentzer, 56 Neb. 460. Matters pleaded by way of estoppel must be of such character and sufficiency as pleaded, to make a cause of action for deceit on part of the party seeking to assert the estoppel. Brigham Young Trust Co. v. Wagener, 12 Utah, 1. There can be no estoppel unless the party to be estopped has misled the party invoking the estoppel as to the true facts, or else for some other reason it would be inequitable to allow the former to set up the truth as to the particular fact in question. Ketchum v. Duncan, 96 U. S. 659; Morgan v. Chicago & A. R. Co., 96 ·U. S. 716; Steele v. St. Louis Smelting & Ref. Co., 106 U. S. 447. No representation having been made by the defendant, he could not well have intended or expected that it should be acted upon by the plaintiff. Farmers & M. Bank v. Farrell,. 19 U. S. App. 256, 58 Fed. Rep. 633.

*B. B. McCloskey*, for respondent.

To constitute dedication there must be such user by the public and such *acquiescence* in the use by the owner of the soil as to establish animus dedicandi. Wood on Nuisances, §§ 241, 242, 248. There are several ways in which dedication of land to the public use as a street or highway may be made. It may be made by deed or through overt act, or may be presumed by the lapse of time or *acquiescence of the party*. City of San Francisco v. Scott, 4 Cal. 115; Case v. Favier, 12 Minn. 89. A situation once created and continued for such a length of time that it would be considered a violation of good faith to the public for the person responsible for it to restore the original situation, brings into play the principle of estoppel in pais. Village of Pewaukee v. Savoy, 79 N. W. 436.

CORSON, J. This is an appeal by the plaintiff from a judgment entered in favor of the defendant and from an order denying a new trial. The action was instituted by the plaintiff to restrain the defendant from continuing to flow water from an artesian well owned by it over and upon premises owned by him, and for damages resulting from the flow of such water upon the premises of the plaintiff. It is alleged in the complaint, in substance, that the plaintiff is the owner in possession of and entitled to the possession of a quarter section of land in Beadle county, and that the defendant constructed a well and negligently allowed the water from this well to flow over and upon the said premises of the plaintiff, thereby causing him damage.

The defendant in its answer admits the ownership of the premises by the plaintiff, the construction by the defendant of the artesian well, and that the water therefrom flows upon and over the premises of the plaintiff, but denies that such water is allowed to flow negligently, or that plaintiff is damaged thereby, and alleges, as a further defense, that said well was constructed on land owned by it in 1893, and that the then owner of the said premises claimed by the plaintiff consented that the water from the said well might flow over the said premises. And the defendant, as.a further defense to said action, further alleges: "That the water from the artesian well which defendant constructed under the operation of the laws of the state of South Dakota, known as the 'Melville Artesian Well Law,' and amendments thereto, has flowed for 14 to 15 years from said well into a natural lake bed which is on plaintiff's land. That when said well was constructed the owner of said land fully acquiesced in the flowing of said water into said lake bed and from this into a natural water course, in which it has flowed for the length of time last aforesaid into Pearl creek, in said county. That the course of said water from said lake bed to Pearl creek has been in no way altered or changed by this defendant for the length of time last aforesaid, but that whatever improvements were made in any way in said water course from said natural lake bed to Pearl creek were made at or about the time said well was constructed, and long before plaintiff had

any interest whatever in said land. That plaintiff, when he pur·
chased the land, purchased it in the· condition it is now in, and
with full knowledge that the water from said well was flowing and
had been flowing into said lake bed, and thence along the course
it· now pursues to Pearl creek, for a great many years. * * *
Defendant further states that it is impossible for them to close off
the flow of said water, as it has broken through the pipe, and is
coming out at the outside of ·same."

The case was tried to the court without a jury, and the court,
after finding the ownership of the property in the plaintiff, and
that the property was conveyed to him by its former owner on
January 8, 1908, and that one Foster R. Clement became the
owner of the premises on January 11, 1893, and continued to hold
the title of the same until 1901, and that one C. G. Church and his
assistant, E. A. Conn, were the agents of Foster R. Clement, the
owner of said land, found:

"That in 1896 C. G. Church and his assistant, E. A. Conn,
were the agents of Foster R. Clement, the owner of said land, and
as such agents maintained an office in Watertown, S. D., and had
charge, as such agents, of the land now owned by plaintiff and of
other lands of said Foster R. Clement, and they, as such agents, at
all times kept said Clement posted as to his business in charge of
the Watertown office. That in the year 1896, and while defendant
township was supplying water from said well for irrigation pur-
poses under the laws of South Dakota, it became necessary to find
an outlet for the surplus water from said well, and Burton Culver,
as chairman of the board of supervisors of said township, for and
on behalf of said township, applied by letter to C. G. Church,
agent of Foster R. Clement, owner of said land, for permission to
run water from said well over the land in question, to-wit, N. W.
¼ of section 28, township 110, range 60. That C. G. Church con-
ducted an office at Watertown, S. D., known as the 'Watertown
Office.' That this office was in operation during the year 1896,
and Edwin A. Conn was in his employ about the year 1897.
Edwin A. Conn had the management of said office, and reported
all matters to C. G. Church that said office had in charge, and

C. G. Church reported to Foster R. Clement. That a part of the business of the Watertown office was to loan money, collect interest, foreclose mortgages, sell farms, rent them, pay taxes, and look after the farms for Foster R. Clement and others, and, among these, the tract in question, above described, belonging to Foster R. Clement was in charge of said office. That said Burton Culver, as township supervisor, received from the above-named Watertown office authority to conduct water upon and across the land in question. That Edwin A. Conn, above-named, personally inspected the artesian well, above described, belonging to defendant, and reported thereon to C. G. Church and had considerable correspondence regarding said well. That the defendant township, from the year 1896 up to the commencement of this action, continued to flow its surplus water over the land in question, without objection from the owners, and said water was so flowing over said land when plaintiff acquired title to same. That while said water was so flowing over said land a representative from the Watertown office examined said land, and reported to said office that the artesian well ran through the land, making sloughs. That said surplus water from 1896 continued to run over said land with the knowledge of the owners thereof, and no objection was made until after it had flowed for many years. No objection was made by Foster R. Clement or Peter Kiene of the water flowing over said land to the board of supervisors of said township, or by any of the subsequent grantees of said land down to May 4, 1907. That the water from said artesian well flows over the land of plaintiff first into a depression, and covering about 12 acres, and from thence southerly in a depression or draw across said land and other lands adjoining into a creek, known as 'Pearl Creek,' and that the fall of said land to the south side of said land is 10 inches. That work has been done on plaintiff's land by some one in conducting the water over said land, and in deepening the draw through which it flows, and prior to the deepening of said channel of said draw, and prior to the flowing of the artesian well water upon said land, water did flow across the said land in question into Pearl creek."

From the facts so found, the court concludes that the plaintiff is not entitled to an injuction or to any damages, and that the defendant is entitled to judgment.

It is disclosed by the evidence that in 1891 the defendant township purchased a small tract of land and sunk thereon an asterian well, for the purpose of irrigation and other purposes, for the inhabitants of the township, under the law then in force, known as the "Artesian Well Law"; that in 1893 the well was completed and flow of water obtained therefrom; that the most convenient and practical method of disposing of the surplus water from said well, not required for irrigating and other purposes, was to permit it to flow across the quarter section now owned by the plaintiff into Pearl creek, distant a mile or so from said well; that Church and Conn, copartners, were acting as the agent of Clement, the then owner of said premises, who resided in the East; that the chairman of the board of supervisors of said township opened a correspondence with said Church with regard to obtaining permission from said Clement, permitting the water from said well to flow down over said premises, which resulted in obtaining from said Church and partner permission to use the same for the said purpose; that said defendant continued to discharge the surplus water from said well over said premises, without objection from the said Clement, the owner of the said premises, up to the time he disposed of the same to one Peter Kiene in 1901, and no objection was made by said Peter Kiene to the waters being discharged over the said premises during the time he owned the same, which terminated in November, 1901, when he disposed of the premises to Edward L. Butz, who made no objection to the water being so discharged during the time he owned the same, which terminated at the time when the premises were conveyed to the plaintiff in 1908, and this suit was commenced by him.

Numerous errors are assigned by the appellant in the admission and rejection of evidence; but, in the view we take of the case, it will only be necessary to consider the assignment of error "that the court erred in its second conclusion of law in finding that plaintiff was not entitled to an injunction, and that the court

erred in overruling plaintiff's motion for a new trial, and in making and entering its order denying the same."

[1] It is contended by the respondent, in effect, in support of the decision of the trial court, that the plaintiff is estopped from asserting any right to an injunction and for damages by reason of the long acquiescence of the owners of the said property in permitting the waters of said artesian well to flow over the premises, and that the acts of the said Clement and his agent, Church, in effect, conveyed an easement or constituted dedication of the portion of the premises required for the discharge of said waters, to the public use. The appellant, however, contends, in effect, that the purported permit to the defendant by the agent, Church, to discharge the said waters over said premises was not sufficient to bind said Clement, and that, assuming he had knowledge that said water was so flowing over said land, he would, in any event, only be bound by the license so given by his agent, as there was no consideration paid for the same, and it does not affirmatively appear by the findings that any money was expended by the defendant by reason of said license; and hence that the plaintiff, as grantee of the premises, is not estopped from revoking said license, and from asserting his claim for damages and his right to an injunction by the findings of the court.

We are inclined to take the view that the appellant is right in his contention. Even assuming that Clement, the owner of the premises in 1896-97, was fully advised of all the facts, and made no objection to the discharge of the surplus waters from the well over said premises, and also assuming that the plaintiff practically occupies the same position as Clement would have occupied, had he still retained the ownership of the land and been the plaintiff in this action, the permission to use the premises for the purposes indicated, not being in the form of a grant or conveyance in writing, was but a mere license, without consideration, and was subject to revocation at any time by the licensor, or any one of his grantees.

The distinction between an easement and license is thus stated in 14 Cyc. 1144: "An easement is a liberty, privilege, or advantage

in land, without profit, existing distinct from the ownership of the land, and because it is a permanent interest in the land of another, with the right to enter at all times and enjoy it, it must be founded upon a grant by writing, or upon prescription, which presupposes a grant; but a license is an authority to do a particular act or series of acts upon the land of another, without possessing any estate therein. A license is founded in personal confidence, and is not assignable and requires no writing, as it is not within the statute of frauds, and is revocable at will; while the grant of an easement is within the statute of frauds, and must be in writing. The distinction between a license and an easement is often very subtile and difficult to discern, but it is mainly important where the right in question has been conferred by parol, and the question is whether. the agreement creates a mere authority to do acts upon the land of another, and hence may be given by parol, or creates a privilege in the land, and hence is void, because not in writing."

It will be noticed that the following statement appears in the forgeoing quotation: "The grant of an easement is within the statute of frauds, and must be in writing." Section 1238 of our Civil Code provides that a contract for the conveyance of land or an interest therein is invalid, unless the same, or some note or memorandum of the same, be in writing and subscribed by the party to be charged, or his agent, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party to be charged.

[2] Where, however, the licensee has acted under the authority conferred by the licensor and has incurred expense in carrying out its provisions, equity regards it as an executed contract, and will not permit it to be revoked. Johnson v. Lewis, 47 Ark. 66, 2 S. W. 329, 14 S. W. 466; Wynn v. Garland, 19 Ark. 23, 68 Am. Dec. 190; Cook v. Chicago, etc., R. Co., 40 Iowa, 451; Beatty v. Gregory, 17 Iowa, 109; Wickersham v. Orr, 9 Iowa, 253; Scott v. Toomey, 8 S. D. 639, 67 N. W. 838.

[3] In the latter case this court held that, under the facts disclosed by the record, in that case the right of the defendant to use a ditch constructed by him for conveying diverted water over the plaintiff's land, although not evidenced by deed and not held for a period of 20 years, could not be questioned by the plaintiff, for the reason that the defendant had expended a large sum of money in constructing and maintaining the ditch under a parol license, with the full knowledge and consent of the owner of the land. In the case at bar, however, as before stated, there is no finding that the defendant had expended any amount of money in the construction of any ditch over the land of the plaintiff, and the findings fail to establish the fact that there was any natural water course on the plaintiff's land along which the waters would naturally flow.

In Mumford v. Whitney, 15 Wend. (N. Y.) 381, the Supreme Court of New York held, as appears by the headnote, that: "A parol agreement that a party may abut and erect a dam upon the lands of another, not for a temporary, but for a permanent, purpose, as the creation of water power for the use of mills and other hydraulic works, is void, within the statute of frauds. It seems all the cases agree that a permanent interest in the land itself can be transferred only by writing." The opinion in that case was written by Chief Justice Savage, in which he reviews exhaustively the cases upon the subjects of license and easement, both in America and England, and which seems to establish the doctrine that no easement can be created in real property, except by grant or prescription, and that a mere parol license is revocable at the pleasure of the licensor, except in cases where the licensee has expended large sums of money on the faith of the license, in which latter cases a court of equity will hold the licensor estopped from asserting his right to revoke his license to the prejudice of the licensee. See, also, Cook v. Stearns, 11 Mass. 536, and other cases cited in Cyc.

It will be observed in the case at bar that the artesian well of the defendant was completed in 1893, and that the permit or license claimed to have been granted by Church, the agent of the then owner, Clement, was made in 1896 or 1897, and that, so far

as the record discloses, there was no expenditure on the part of the defendant on the faith of the permit or license, as the defendant seems to have simply permitted the surplus waters from the artesian well to flow upon and over the premises then owned by Clement and subsequently owned by various grantees down to the time that the premises were conveyed to the plaintiff in January, 1908. It seems quite clear from the authorities, therefore, that Clement, or any subsequent grantee, was at liberty to revoke the license, and that the same was properly revoked by the plaintiff in this action. Giving the findings, therefore, the most favorable construction which they will bear, they fail to establish any right on the part of the defendant to continue flowing the said waters upon the premises of the plaintiff, without his consent, after the license was revoked. The court was clearly in error, therefore, in its second conclusion of law in denying the defendant's motion for new trial, and in entering judgment in favor of the defendant.

The judgment and order denying a new trial are reversed.

WHITING, J., took no part in the decision.