## Gibbs v. Anderson.

Dec. 2, 1941.

R. C. Tartar for appellant.

M. L. Jarvis for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

M. A. Gibbs brought this action in the Pulaski circuit court against A. L. Anderson to enjoin the latter from obstructing a passway leading from the plaintiff's land to a public highway. The chancellor adjudged that the plaintiff was not entitled to the relief sought, and dismissed his petition. He further adjudged that the defendant was entitled to the relief sought in his counterclaim, and enjoined the plaintiff from using for any purpose the passway described in the pleadings. Plaintiff has appealed.

In 1933 M. A. Gibbs purchased from Samuel Mayfield 100 acres of land, and in the deed Mayfield granted to Gibbs a right of way for a road to the county highway through other land owned by him. John Hodge owned 30 acres of land adjoining the Mayfield tract, and an old rail fence separated the two tracts. Assuming that the rail fence was on the line, Gibbs constructed a road along the fence from his 100-acre tract to the county road. It developed that Hodge's deed called for about 1/3 of an acre beyond the rail fence. This 1/3 of an acre is a triangular piece of land, is not tillable, and has only a nominal value. About 350 feet of the road constructed by Gibbs is on this triangular tract. John Hodge later conveyed his 30-acre tract of land to Dudley Strong, and Strong conveyed 8 acres to the appellee, A. L. Anderson. The passway in question crosses the 8-acre tract now owned by Anderson.

M. A. Gibbs testified that before the construction of the road was completed he learned that John Hodge claimed it crossed his property, and he had a conversation with Hodge in which he offered to change the location of the road so that it would pass around the Hodge property and Hodge told him not to change it that he was glad to have it as a means of getting to and from that part of his land. Gibbs was corroborated by two witnesses who worked on the road during its construction and heard Hodge say that he had no objection to the construction of the road on his land. The construction and repair of the 350 feet of road on the Hodge land cost approximately $100. After the road was constructed Gibbs opened a coal mine on his 100-acre tract of land and has been hauling coal over the road since its construction. The proof shows that appellee lived in the neighborhood and knew the road had been constructed by Gibbs over a corner of the Hodge land. He testified that Hodge told him when he purchased the land that no right of way had been conveyed to Gibbs. He made no inquiry of Gibbs, but after the land was conveyed to him and after he had attempted to sell it to Gibbs, he closed the road and this litigation followed.

It appears that the chancellor dismissed the plaintiff's petition on the theory that the statute of frauds controlled since the plaintiff had no written contract with John Hodge. Hodge was introduced as a witness by appellee, but his testimony is evasive, indefinite, and

unsatisfactory. He admitted that he discussed the pass-way with Gibbs before it was constructed and agreed that it might be built through his land. He stood by and saw Gibbs expend considerable money in its construction. He said, however, that he told Gibbs "the road didn't come in my way so long as it didn't come in the way of me selling my property, that was about the upshot of the road question between Mr. Gibbs and me." Gibbs and his witnesses denied that anything was said concerning the effect of the road on the sale of Hodge's land.

We think the facts bring this case within the rule announced in Lashley Telephone Company v. Durbin, 190 Ky. 792, 228 S. W. 423, wherein it was said:

> "Though many courts hold that a licensee is conclusively presumed as a matter of law to know that a license is revocable at the pleasure of the licensor, and if he expend money in connection with his entry upon the land of the latter, he does so at his peril (Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304, 53 N. W. 639; Hathaway v. Yakima Water, Light & P. Co., 14 Wash. 469, 44 P. 896, 53 Am. St. Rep. 874; Lambe v. Manning, 171 Ill. 612, 49 N. E. 509; Harris v. Gillingham, 6 N. H. 9, 23 Am. Dec. 701; Crosdale v. Lanigan, 129 N. Y. 604, 29 N. E. 824, 26 Am. St. Rep. 551), yet it is the established rule in this state that where a license is not a bare, naked right of entry, but includes the right to erect structures and acquire an interest in the land in the nature of an easement by the construction of improvements thereon, the licensor may not revoke the license and restore his premises to their former condition after the licensee has exercised the privilege given by the license and erected the improvements at considerable expense. * * * It is also the settled rule that where a vendee purchases property, over which a telephone line has been constructed, under a parol license from his vendor and the telephone line is open and visible, he purchases subject to the right of the telephone company to maintain such line, and even if the owner had the right to revoke the license and require the removal of the structure, such right does not pass to the vendee."

See, also Carrollton Telephone Exchange Company

v. Spicer, 177 Ky. 340, 197 S. W. 827, L. R. A. 1918A, 950; Jarvis v. Satterwhite, 3 Ky. Law Rep. 190, 11 Ky. Op. 167; 33 Am. Jur., Licenses, Section 103.

The evidence in this case establishes that the license relied upon by appellant was an express agreement, and that there was no detriment to the licensor but, on the other hand, benefit inured to him. Under the circumstances, it would be a fraud on the licensee to permit a revocation now.

The judgment is reversed, with directions to enter a judgment granting the relief prayed for in the plaintiff's petition.