TINA COUMAS and MARY KOCHIRAS,

*Plaintiffs and Respondents,*

vs.

TRANSCONTINENTAL GARAGE, INC., a Corporation, and EDWIN W. SPENCER,

*Defendants and Appellants.*

TINA COUMAS and MARY KOCHIRAS,

*Plaintiffs and Appellants,*

vs.

TRANSCONTINENTAL GARAGE, INC., a Corporation, and EDWIN W. SPENCER,

*Defendants and Respondents.*

(Nos. 2465 and 2466; May 1, 1951; 230 Pac. 2d 748).

100

For the defendants and appellants in Case No. 2465 and defendants and respondents in Case No. 2466, the causes were submitted upon the brief of Clarence W. Cook and P. W. Spaulding, both of Evanston, Wyoming, and oral argument by Mr. Cook.

For the plaintiffs and respondents in Case No. 2465 and plaintiffs and appellants in Case No. 2466, the causes were submitted upon the brief of and also oral argument of Louis Kabell, Jr., of Evanston, Wyoming.

106

## OPINION

BLUME, Justice.

This is a case involving rights in a wall standing between two lots in the town of Evanston in this state. Briefly stated, plaintiffs Tina Coumas and Mary Kochiras, claim that the wall is a partition wall and that they have a perpetual easement in this wall and brought the action to restrain the defendant, Trans-Continental Garage, a corporation, from interfering with that right. Defendant, on the other hand claims the sole ownership of the wall; that it gave a mere and limited license for the use thereof by the plaintiffs, and that the license is revocable at will. It asked the court for a decree that the plaintiffs have no interest in the wall. The lots in question are located in Block 5 of the town of Evanston facing Front Street on the north, the street running easterly and westerly. According to the original plat of the town of Evanston these lots are presumably 25 feet in width. Plaintiffs are the owners of Lot 8 which is easterly of the lots owned by the defendant. Defendant owns Lots 9 and 10 of the block in question, Lot 9 adjoining Lot 8 on the westerly side. A frame building was erected on Lot 8 sometime about 1876, and for many years was used as a saloon building. It was some 16 to 18 inches easterly from Lot 9. About 1885 a brick building of two stories was constructed on Lots 9 and 10 in question. Its width was less than 50 feet, so apparently it was constructed and

intended to be constructed exclusively on Lots 9 and 10. It was originally constructed as an opera house but since about 1923 has been used and is now being used as a garage. In the spring of 1936 the present owners of Lot 8 determined to and did tear down the frame building on Lot 8 and proceeded to construct a brick building two stories high in place thereof. A resurvey of the lot was made by a surveyor. Specific facts in that connection will be mentioned later. It was admitted by the agent of the plaintiffs that he, on behalf of plaintiffs, asked the manager of the defendant to give permission to anchor the building of the plaintiffs to the building of the defendant, by using the defendant's easterly wall as a support for the westerly wall of the building to be erected on Lot 8. He, at the same time, so he testified, claimed that plaintiffs had a half interest in the wall, and that he asked the permission mentioned merely so as not to have any trouble. Oral consent to use the wall for such support was given, and plaintiffs anchored their building to the building of the defendant by joists and bolts. It does not appear that defendant received any compensation for the permission, or any other benefit. In 1947 the manager of defendant asked the plaintiffs to cease to use the wall, apparently on the ground that such use cracked it. The witness Steve Kochiras, however, testified on rebuttal that he saw those cracks in 1919, and that they existed long before the building of the plaintiffs was constructed. By agreement of the parties the trial judge went and examined the building and seemingly found the contentions of defendant in that connection not well taken. Other details and contentions will be mentioned later. The court made the following findings of fact:

## "FINDINGS OF FACT

"1. That the cost of plaintiffs' new building including the use of defendants' wall to the extent hereinafter

stated, was $25,000.00; and said amount was expended in using as one of the walls of their said building, the easterly wall of defendant's garage building, to which finding the defendants duly except.

"2. That from that portion of the easterly side of the defendants' garage building exposed to view and viewed by the court, the appearance does not indicate that any prior building was ever attached to or made any use of the garage building wall or any part thereof, except for attaching flashing from the false or second roof of their old building on Lot 8 to easterly wall of garage building for the purpose of roof drainage and to prevent water from running down into the space of about sixteen or eighteen inches between the former building on Lot 8 and the defendants' garage building; and such use was without the knowledge and consent of the present owners of the defendants' building; to which finding the plaintiffs duly except.

"3. That consent was given to the plaintiffs by the owners of the garage building, such owners being the defendants, at or during the erection of the building on Lot 8 to use the garage building wall to anchor the second floor and roof joists of the new building to the easterly wall of the garage building, and such wall was so used with the knowledge and consent of the then owners of said garage building, such use being limited to these stated purposes, to which finding the defendants duly except.

"4. The Court further finds that the plaintiffs are the owners in fee of the premises now occupied by them, being said Lot 8 in Block 5 of the original town of Evanston, Uinta County, Wyoming, but that the same does not include the said easterly garage wall, to which finding the plaintiffs duly except.

"5. The Court further finds that the plaintiffs and

their predecessors in interest have no interest in the said easterly wall of said garage building by adverse possession, to which finding, the plaintiffs duly except."

The conclusions of law of the court are as follows:

## "CONCLUSIONS OF LAW

"1. That plaintiffs have the right to use the garage building wall to anchor the second floor and roof joists of their new building to the easterly wall of the garage building, and to use such wall in that manner and to that extent only, and that such use shall continue without interference of the defendants so long as the nature of such use continues, to which conclusion defendants except.

"2. That the temporary restraining order heretofore granted in this action should be made perpetual, to which finding defendants duly except.

"3. That plaintiffs are entitled to be adjudged and declared owners in fee of Lot 8, Block 5, original Town of Evanston, Uinta County, Wyoming, not including the said garage wall or the land on which it stands ,to which finding plaintiffs duly except.

"Now, therefore, pursuant to said findings of fact and conclusions of law, and on motion of Louis Kabell, Jr., Esq., attorney for plaintiffs:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiffs have the right to use the garage building wall to anchor the second floor and roof joists of their new building on Lot 8, Block 5, original Town of Evanston, Uinta County, Wyoming, to the easterly wall of the garage building on Lot 9 of Block 5, of the Original Town of Evanston, Uinta County, Wyoming, and to use such wall in that manner and to that extent only, and that such use shall continue without

interference of the defendants, so long as the nature of such use continues, to which defendants duly except.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the temporary restraining order heretofore granted in this action should be made perpetual and the defendants and each of them, their representatives, agents, attorneys and servants be, and they are hereby enjoined and restrained from in any manner interfering with, molesting and loosening the nuts on the bolts in the said wall of plaintiffs' building or in any manner committing any acts, severing or tending to sever the supports of the floors and ceiling joists of plaintiffs' building on Lot 8 in said Block 5, so long as the nature of said use of said wall by plaintiffs shall continue, to which defendants duly except.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs be, and they are hereby declared and adjudged to be the owners in fee of said Lot 8 in Block 5 of the Original Town of Evanston, Uinta County, Wyoming, not including the said garage wall or the land on which it stands, to which plaintiffs duly except."

Both parties have appealed from the decree entered herein. It is apparent that whatever relief was given to plaintiffs was given on the theory of estoppel. Edwin W. Spencer, manager of defendant corporation, who was made defendant in this case, died after the trial of this case. It does not appear that he had any interest in this case separate from that which he had in the defendant corporation. Hence, the latter is herein treated as the sole defendant, and with that understanding, the parties will be referred to herein as in the court below.

## 1. ON THE APPEAL OF THE PLAINTIFFS.

It may be noted that the court refused to find that the plaintiffs have any interest in the easterly wall of the building of the defendant, other than the right of support mentioned in the decree. In that holding is necessarily included the fact that plaintiffs have no interest whatever in the ground—the area—on which the easterly wall of the defendant stands.

The substance of the contention of plaintiffs on the contrary is that the easterly wall of the building of the defendant stands partly on Lot 8; that the true boundary line between Lots 8 and 9 is somewhere—at least $7\frac{1}{4}$ inches—inside of the easterly line of the easterly wall of the building; that this line has been recognized as the true boundary line between the two lots for eleven years prior to the trial of this case; that accordingly the plaintiffs are part owners of the wall, and that the court erred in not so finding and decreeing.

The witness Chapman, a civil engineer, made two surveys to establish the boundary line between Lots 8 and 9 in question, one in 1936 and one in 1947. The record shows that all the original monuments located in the town of Evanston are lost, and a resurvey was made in 1932 by one Almond. In the 1936 survey Chapman did not use this resurvey, but used "the building lines that were then established." The old opera house, the defendant's building, was the oldest building in Block 5 here in question. But Chapman did not use the lines of that building in his survey. One reason was "because the front of it measures greater than the length (width) of the two lots, which would be 50 feet, so one corner or the other must have been wrong." Instead, he used an old building which he thought was older than the old opera houses, but which was located in another block, east of Block 5, and he also used that building because it stood on a corner. In that survey

he found that the easterly wall of the old opera house (which wall apparently has a total width of 19 inches) stood about one foot on Lot 8, and other testimony shows that he placed a nail at what he thought to be the dividing line. One reason why Chapman did not use the opera house as a starting point proved to be wrong. The building was not over 50 feet in width, as he had measured it, for when he measured it during the trial of the case he found the width to be only 49 feet and 10¼ inches. In the 1947 survey Chapman relied entirely upon the resurvey made in 1932, and found the easterly wall of the building of defendant to be partly on Lot 8—not to the extent of one foot—but to the extent of 7¼ inches. It is accordingly clear that we cannot place too much reliance on either survey. In the absence of known monuments the best evidence obtainable may be resorted to for the purpose of establishing lines. Such evidence may consist of old buildings. Murray Hotel Co. vs. Golding, 54 N. M. 149, 216 P. 2d 364 and cases cited. The situation in the case at bar is different from the situation disclosed in the case of Hudson vs. Erickson (Wyo.) 216 P. 2d 379. We thought in that case that not to accept the 1932 survey might disturb the boundaries of many lots in the town of Evanston. In the case at bar another element enters in, namely, whether or not a long established boundary b yan old building should be disturbed. What is the best evidence obtainable in the case at bar under the rule above stated? The building erected as an opera house, now serving as a garage, was erected about 1885. It was half a century old in 1936. It was built on two lots, namely Lots 9 and 10, each of which were presumably 25 feet in width. The width of the building is 49 feet and 10¼ inches. There is no evidence that its easterly wall was constructed to serve as a partition wall, or that there was any intention whatever that such easterly wall should serve as such. These facts clearly tend to

show, and the court had a right to find, that the intention in constructing the building about 1885 was to construct it exclusively on Lots 9 and 10, and that the easterly side of the easterly wall should be wholly on Lot 9, constituting the easterly side of the easterly wall as the division line between Lots 8 and 9. So far as appears no one has questioned that line up to 1936. For one-half century it was apparently acquiesced in as the boundary line. Hence, we must accept it as such. See Carstensen vs. Brown, 32 Wyo. 491, 236 P. 517, 11 C. J. S. 652, 654, Lindell vs. McLaughlin, 30 Mo. 28, 77 Am. Dec. 593, Hannah vs. Pogue, 23 Cal. 2d 849, 147 P. 2d 572, O'Malley vs. Jones, 46 Ida. 137, 266 P. 797, Tarpenning vs. Cannon, 28 Kan. 665. These authorities are cited by counsel for the plaintiff but the trouble is that he applies them in the wrong connection.

Plaintiffs, apparently for the purpose of showing that the owners of Lot 8 always had an interest in the easterly wall of the brick building of the defendant, attempted to show that the old frame building on Lot 8 which was torn down in 1936 was fast up against the easterly wall of the old opera building. The witness Steve Kochiras testified that: "The wall of the brick building was a wall of the frame building. There was no space between the buildings." It may be noted here that the court substantially found against this contention, and there is ample testimony to sustain the finding of the court in that connection. E. W. Spencer, manager of the defendant company, testified that there was a space between the two buildings and that he never gave any consent to use the property of the defendant to the plaintiffs while the old frame building stood on Lot 8. The testimony is also corroborated by the witness Carruth. He testified (as of 1936) "I think the old frame building that was torn down was an entire building in itself. I know the front was, but I wasn't there when

it was torn down. I don't remember seeing anything to indicate that that wall had been used as a party wall." According to the witness Adrian Spencer the space between these two buildings was between 16 to 18 inches. While an addition or additions to the old frame building may have been attached to the brick wall of the defendants by some flashing, as found by the court—and that without the knowledge of the defendant—it is quite clear that the original frame building in the first place—i.e. the front part of it—was never attached to the brick building. It was built about 1876 or 1877, long before the brick building of the defendant was constructed, and it must necessarily have had its own separate and independent wall on the westerly side of it. Nor is there any evidence as to when that condition was changed, or that the defendant had any knowledge of any changed condition, or gave any consent thereto. Prima facie, accordingly, the rule would apply as stated in Nabers vs. Wise, 241 Ala. 612, 4 So. 2d 149, 151 as follows: "When one adjoining lot owner builds on his own property, one wall flush with the line, but resting wholly on his own property, the adjoining owner acquires no interest nor easement in such wall. He cannot acquire such interest other than by grant, or by prescription raising a presumption of a grant. He cannot, as of right, use such wall as a common wall, or as lateral support for a building thereafter erected on his own lot." An exception to this principle will be mentioned later in the course of this opinion.

To repeat, counsel for the plaintiffs claims that approximately the middle of the easterly wall is the boundary between Lots 8 and 9, and that this line was recognized by the defendant and was acquiesced in for the period of eleven years. Thus he states: "The undisputed evidence in this case discloses that the permission

given was not a parol license but a parol acquiescence and agreement to the boundary line established by the surveyor in the center of the wall where he placed the nail. * * * When manager Spencer acquiesced in the boundary line, established and gave permission, he admitted that the wall was built partly on the land of each party." Numerous other statements of similar effect are found in the brief. Counsel, as is not unusual, is a bit enthusiastic as to the effect of the evidence in this case. He bases his conclusion on the fact that Chapman, the surveyor, found the true line to be approximately in the center of the wall and placed a nail at that place. The witness Kochiras testified that he asked the manager of defendant to let the plaintiffs use the wall; that at the same time he explained to E. W. Spencer that the wall was standing partly on the plaintiff's lot; that Spencer at first told him not to bother anything but that "after he found out half the wall was on our property he gave us permission to go ahead and build." The latter statement is partly a conclusion of the witness. Posssibly—but only possibly—this evidence might give rise to the inference that manager Spencer recognized the line, marked by the nail, as the boundary between the two lots. But he testified among other things: "No one showed me the nail in the wall until later, after this suit was filed. No one claimed that part of the wall was on their lot until about two days before this suit was filed." According to his testimony he gave permission to the use of the wall by the plaintiff only after he was asked to do so, and only after he was assured by the contractor for plaintiffs' building that the insertion of the bolts in the wall would not in any way endanger the building of the defendant. The trial court found against the plaintiffs on the point here in question. That finding is sustained by ample testimony and cannot be disturbed by us. Counsel for plaintiffs claims that the testimony of E. W. Spencer is not to be

credited, but his credibility was a question to be resolved by the trial court.

Lot 8 as such was conveyed to Orlando North, predecessor in interest of plaintiffs in 1892. At that time the defendant's brick building was standing, so the lot was bounded by the wall in question on the west. Counsel for the plaintiffs argues that: "The conveyance of the lot carried title to the center of the wall." He quotes from 11 C. J. S. 596, Section 46 reading as follows: "A conveyance of land bounded by a wall will, in the absence of anything to denote a contrary intention, carry title to the center of the wall, even though such a construction may have the effect of making the land conveyed wider than the description in the deed indicated." If a tract of land is conveyed as bounded by a stream it is presumed that the actual line is in the middle of the stream; if the conveyance is described as bounded by a street, the presumption is that it carries title to the middle of the street. See 9 C. J. 206, Section 110. The rule applies to cases where the conveyance is by metes and bounds or some physical object is shown or indicated as the boundary, or where a common owner of buildings standing on adjoining lots and having a common wall, conveys one of the lots. 69 C. J. S. 7. None of these underlying and required facts exist in the case at bar, and the rule, accordingly has no application here.

It follows, from what has been said, that the appeal of the plaintiffs herein is without merit.

## 2. ON THE APPEAL OF DEFENDANT.

The evidence is conflicting as to the extent of the permission granted to the plaintiffs as heretofore mentioned. We do not find, however, that defendant contends that the court was not justified in its findings of facts. Its counsel say: "This appeal of the defendant

and appellant, TransContinental Garage, Inc., as we see it, presents these two questions, namely: 1st. Is a parol license, after expenditure of money, irrevocable? 2nd. If so, was the construction of licensees' building. ON THEIR OWN LOT 8, and which was planned before the license was given, such an expenditure as would make the license irrevocable." They contend for the negative on both of these questions.

If plaintiffs have any interest in the wall in question as a party wall, it is only the right of support, which is an interest in the nature of an easement, limited, of course, as by the decree of the trial court. It is said that one definition of a party wall is "a wall located" (as in the case at bar) "entirely upon the land of one of the adjoining owners, and belonging entirely to him, but subject to an easement in the other to have it maintained as a division wall between the two properties and to use it for purposes of support." 3 Tiffany on Real Property (3rd Ed.) page 227. The inception of a right in plaintiffs rests in parol. It is not pretended that any writing to create the right exists. Though exceptions exist, one of which is hereinafter stated, the general rule is stated in 28 C. J. S. 639 to the effect that "an easement may be created or passed only by deed, that is, by grant, reservation, or covenant, or by prescription, which presupposes a grant." See also 17 Am. Jur. 936, 49 Am. Juris. 513. That appears to be true on account of the policy of the law, particularly because of the statute of frauds, not to permit the creation of an interest in the land of another except by the methods as mentioned. See 33 Am. Juris. 398, 399, 411, Yeager vs. Tuning, 79 Ohio 121, 86 N.E. 657, 19 L.R.A. N.S. 700, Hodgkins vs. Farrington, 150 Mass. 19, 22 N.E. 73, 5 L.R.A. 209, Croasdale vs. Lanigan, 129 N. Y. 604, 29 N.E. 824, 26 Am. St. Rep. 551, Howes vs. Barmon, 11 Ida. 64, 81 P. 48, 69 L.R.A. 568. In that con-

nection the courts generally apparently ignore or consider inapplicable the rule that in order to rely upon the statute of frauds, it must be pleaded, or objection must in some way be raised. Hence, the permission given by defendants to the plaintiffs must be construed to consist, as of its inception, of nothing more than a license, which ordinarily and before it is executed as hereinafter mentioned, is revocable at any time. See 33 Am. Juris. 404, Jones on Easements, page 523. Since then the inception of the right of plaintiffs was permissive, no rights by prescription were acquired, though counsel for the plaintiffs seem to think the contrary to be true. If the possession originates by permission, it is not adverse unless there is a clear disclaimer of the rights of the owners. 2 C. J. S. 624, 640. There is no clear disclaimer in the case at bar. It is said in 69 C. J. S. 7 that in order that a party wall may be created by prescription the "user must be adverse and not permissive." The trial court in the case at bar specifically found that the use by plaintiffs of the easterly wall of the defendants was permissive when it found that the defendants consented to such use. In the case of Church vs. Revell, 68 S. D. 377, 2 N.W. 2d 674 the court stated: "The court found the use of the driveway prior to 1934 to have been permissive. That this finding must stand unless against the clear preponderance of the evidence is too well settled to require citation of authority. We think no different inference could be legitimately drawn from this evidence. To hold otherwise would be to adjudge that common neighborliness may only be indulged under penalty of encumbering one's property. The use was not adverse. Use which is not hostile or adverse will not ripen into a prescriptive right. 17 Am. Jur. 974." See also Baum vs. Denn, 187 Ore. 401, 211 P. 2d 478, Allen vs. Lewis, 26 Wyo. 85, 177 P. 433. The rule of acquiescence is correlated to the rule of adverse possession. 11 C. J. S.

652. And what has been said as to permissive use in connection with prescription must, we think, equally apply in connection with acquiescence of use. 11 C. J. S. 653, Note 45, 9 C. J. 245, Note 4.

Whatever interest in the wall here in question in the nature of an easement plaintiffs acquired is upon a theory different than that heretofore stated, namely, under an exception to the rule above mentioned, that is to say, upon the theory of equitable estoppel after execution of the license by expenditures of money or labor. We find two divergent views on that subject. It is stated in 33 Am. Juris. 410:

"The courts of many of the states uphold the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is nevertheless revocable at the option of the licensor, and this although the intention was to confer a continuing right, and money had been expended by the licensee on the faith of the license. * * * It is asserted that the licensee is conclusively presumed, as matter of law, to know that a license is revocable at the pleasure of the licensor, and if he expends money in connection with his entry on the land of the latter he does so at his peril."

To the same effect is 53 C. J. S. 818. Massachusetts adheres to the foregoing rule. The court applied it to a wall such as involved in the case at bar, in the case of Hodgkins vs. Farrington, 150 Mass. 19, 22 N.E. 73, 5 L.R.A. 209, where it held according to the syllabus in the case that: "An oral permission given by the owner of realty to an adjoining owner to build on and let timbers into a wall standing on the former's land, of which the wall was to remain a part, passes no estate in the realty, but creates a license only, revocable at the will or by the death of the owner, or by his alienation of the land." See similar in effect Munter vs. Kobre, 107 Misc. 261, 177 N. Y. S. 393.

A different doctrine has been announced by other courts which hold that a parol license may ripen into an easement and it is said in 33 Am. Juris. 408:

"In many jurisdictions where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for. * * * The cases holding to this rule as to irrevocability of certain licenses proceed on two distinct theories, one theory being that when the licensee expends large sums of money in making the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and, as such, irrevocable; and that, in fact, what was at its inception a license becomes in reality a grant. The other theory and the reason most frequently given is that after the execution of the license, it would be a fraud on the licensee to permit a revocation; and the principles of equitable estoppel are invoked to prevent what would work a great hardship in many instances."

The same rule is stated in 53 C. J. S. 816 as follows: "In some jurisdictions, where the licensee has acted under the license in good faith, and has incurred expense in the execution of it, by making valuable improvements or otherwise, it is regarded in equity as an executed contract and substantially an easement, the revocation of which would be a fraud on the licensee, and therefore the licensor is estopped to revoke it." See Annotation in Ann. Cas. 1913A, 74. Some of the recent cases upholding the rule are Fitzsimmons vs. Gilmore, 134 Neb. 200, 278 N.W. 262, Waters vs. Baker, 190 Ga. 186, 8 S.E. 2d 639, Gibbs vs. Anderson, 288 Ky. 488, 156 S.W. 2d 876, Baum vs. Denn, 187 Ore. 401, 211 P. 2d 478 (where it is intimated that this rule is the minority rule). No annotation directly in point is found in the American Law Reports and in view of our own

cases, we have not taken the time to determine just how many states adhere to the respective rules heretofore mentioned. (See Annotation on a kindred topic in 76 A. L. R. 304).

This court has had occasion to consider the last mentioned rule in several cases. The case of Metcalf vs. Hart, 3 Wyo. 513, 27 P. 900, written by Mr. Justice Conaway, contains an exhaustive opinion on the subject up to that time. One Hart had a desert-land entry, not yet patented, in the town of Buffalo as it now stands. He was anxious to have a town built and offered to give for a nominal amount, deeds to all who had built on the land by the time he would receive a patent. Metcalf built a store on a corner and the question arose as to what equities Metcalf had by reason of the license. We need not go into the various factors involved in that case. Mr. Justice Groesbeck in a separate opinion stated: "The elaborate and learned opinion of my Brother Conaway establishes to my mind that the doctrines of license and equitable estoppel must be applied to the determination of this case, and that the complainant is entitled to relief under these well-known equitable doctrines." It is true that in that case the court, by Mr. Justice Conaway, stated that no general rule could be laid down as to the revocability of licenses after expenditures of money. That is doubtless true. There are many cases in which, for instance, it clearly appears that a license given was for temporary purposes only, and no easement should be implied in such case. The Metcalf case refers among other cases to Russell vs. Hubbard, 59 Ill. 335. In that case it appeared that one Harman owned a wall of a building. He induced a neighbor, Furry, to build a brick building on the adjoining lot instead of a frame building and let him use an adjoining wall. The brick building would cost considerably more than would the frame building. Furry,

accordingly, built a brick building and the question arose as to whether or not the license to use the wall of Harman could be revoked. The case accordingly bears a considerable resemblance to the case at bar. The Illinois court held that it would be a fraud upon Furry to revoke the permission to use the wall of Harman. The court in Metcalf vs. Hart stated (3 Wyo. 551) : "we believe the court was right in saying it would be a fraud to revoke the license in reliance upon which a house had been built, and that, if not at law, at least in equity, there is a remedy for the licensee * * *. When we have traveled through the mass of decisions, cloudy and conflicting at times, and have arrived at the principle that equity will relieve where there is fraud, actual or constructive, we have arrived at a principle in regard to which there is no conflict. And courts of equity, as quotations already given show, are very generally agreed that the revocation of a parol license to permanently occupy and improve realty after any considerable expense has been incurred, on the faith of such license, under circumstances such that the parties cannot be placed *in statu quo*, is either actual or constructive fraud. Even the courts of law very extensively recognize the fraud, and some of them remedy it by equitable estoppel; but it seems the majority of them acknowledge their inability to furnish the appropriate remedy, while suggesting frequently that equity may do so."

The case of Gustin vs. Harting, 20 Wyo. 1, 121 P. 522 involved a parol license to build a flume in connection with irrigation. The question arose as to whether or not the parol license could subsequently, after the flume had been constructed, be revoked and the court held that it could not be, apparently laying some stress on the fact that the builders of the flume could, under the

statutes of this state, have condemned a right-of-way for the flume for the purpose of irrigation.

In the case of Forde vs| Libby, 22 Wyo. 464, 143 P. 1190, a parol agreement was entered into by several owners of adjoining lots to set aside a strip on the dividing line as a private alley. The owners built their buildings in accordance with the parol agreement thus entered into and the question was whether or not the license involved in that case was revocable. It was held that it was not, the court stating among other things: "Defendants contend that at most this oral agreement with reference to establishing the private way was a revocable license. We deem it unnecessary in the view we take of this case to enter into a lengthy discussion as to the difference between a parol license which may be revoked at will and an easement other than to say that it has been held by this court in Gustin v. Harting, 20 Wyo. 1, 121 Pac. 522, 33 Ann. Cas. 1914C, 911, that a parol license may ripen into an easement when the licensee has expended money and the license has become executed. (Dark v. Johnston, 55 Pa. St. (5 P. F. Smith) 164, 93 Am. Dec. 732)."

We think that this court under these decisions is committed to the rule that in the proper case a parol license to use part of the real estate of another becomes irrevocable when a license is executed, and when the licensee in pursuance of and in reliance thereon has incurred expenditures of money or labor in making improvements of a permanent character. It has become a rule of property which should not be lightly repudiated.

What has been said does not mean that all licenses, followed by expenditures of money or labor, result in the irrevocability thereof, or that the same relief will be given in all cases. It has been said that each case

depends "on the nature of the license and other circumstances and on whether a revocation in a given case would amount to a fraud on the rights of a licensee." 53 C. J. S. 816. In 5 Restatement of the Law, Property Servitudes, page 3135 we find it stated: "In many transactions which involve the creation of a privilege to use land, the privilege is such a minor incident to other purposes of the transaction that considerations of practical convenience prevent the transactions as a whole from being considered as an attempt to create an interest in land so far as concerns the compliance with formal requirements for the creation of such interests." In Metcalf vs. Hart, supra, the court stated among other things: "Cases may arise and have arisen where a license to occupy land has been intended and understood as a mere personal favor to the licensee to give him a place to live, or to occupy for some other beneficial purpose not transmissible, but revocable at will. Then expenditures would naturally be made accordingly. In other cases the granting of the license has been in terms an assurance of permanent possession. It is evident that the same rule cannot apply to both classes of cases. The revocation of the license, even after expenditures made in consequence of it, in the one case is a right, in the other a fraud. No general rule can be made as to the revocabilty of such licenses after such expenditures. Each case stands upon its own circumstances." From this it appears that whether or not the intended use is to be permanent is a matter of some importance, at least in the eyes of some of the courts. Thus it was said by the court in McCarthy vs. Kiernan, 118 Ore. 55, 245 P. 727, 729: "Before equity will restrain the revocation of a license of uncertain duration, the evidence must clearly establish that refusal to do so will result in the perpetration of a fraud." And permanency of use seems to imply improvements permanent in character. See Shaw vs. Proffitt, 57 Ore.

192, 110 P. 1092. It s said in 53 C. J. S. 806 that a license "is a mere personal privilege to do certain acts of a temporary character on the land of another." That is doubtless true as to some licenses. A more universal rule is, we think, that a privilege to do certain acts of a temporary character on the land of another is and always remains a mere license which is revocable at the will of a licensor unless a definite time has been specified, or unless it is coupled with an interest. It is stated in 5 Restatement of the Law of Property, page 3137 that "licenses coupled with an interest are incidental to an interest in a chattel," so that we do not have such a case as that before us. Nor was any definite date for the duration of the license expressly fixed. Defendants in this case sought to show that the license issued in this case was merely temporary. E. W. Spencer, manager of the defendant, testified that the permission given in this case was to be of a temporary character. But the court was not, we think, bound to credit that testimony, except as expressing an opinion. Ordinarily, at least, it is hardly likely that a man would construct a brick building, fail to construct one of the walls of his own building, but attach the building to another's wall, for a mere temporary purpose. We think that ordinarily at least everyone would expect such an attachment to be intended to be of a permanent character. A noted writer—Charles E. Clark, now one of the Justices of the United States Courts of Appeal—stated in an article in the Columbia Law Review, Vol. 21, pages 757, 781: "And it seems that unless the licensor has stated that his permission is given to last permanently or for a stated time, he should be entitled to extinguish the privilege at any time." We can see no good reason, however, why the permanency of use may not be implied from the nature of the intended use, and we think that in the absence of clear evidence to the contrary, it should be so implied when the intended use is the at-

tachment of a building to an adjoining wall, which is, by its nature, an improvement of a permanent character. See City of Owensboro vs. Cumberland Tel & Tel. Co., 230 U.S. 58, 33 Sup. Ct. 988-990 where that was held to be true in connection with the use of telephone and telegraph lines. There is some reason for what we have said. Division or party walls are of ancient origin going back substantially to the great fire of London in 1660. Jackman vs. Rosenbaum Co., 263 Pa. 158, 106 Atl. 238, 260 U.S. 22, 67 L. Ed. 107, 43 Sup. Ct. Rep. 9. They have arisen out of necessity, custom, business requirements and business convenience, particularly in congested cities and in business districts generally. They are subject to police regulations. Jackman vs. Rosenbaum Co., supra, 69 C. J. S. pages 5-6. Some statutes provide that if a wall is built wholly on the land of one neighbor, the other may make use of it by paying the proper amount for the use. 69 C. J. S. 6. Such statutes are, of course, based on practical and business reasons. Our own statutes, Section 29-347, Wyo. Comp. St. 1945 gives cities of the first-class the power to regulate party walls. There is no particular necessity in connection with licenses in real estate generally to make them subject to the police power of the state. Of course, the invasion of another man's property cannot ordinarily be justified and one property should not ordinarily be burdened by another against the will of an owner pursuant to a mere license which is revoked, but it would seem that for business reasons if the doctrine of equitable estoppel is to be applied at all, it is justly applied in the proper case in connection with a wall which divides the properties of neighbors. It has in fact been so applied in such cases. We shall review some of the cases more or less directly in point on the question before us, part of which will shed light on both of defendant's contentions.

We have already heretofore referred to the case of Russell vs. Hubbard, 59 Ill. 335. That case has been sought to be distinguished, as for instance in the case of Forbes vs. Balenseifer, 74 Ill. 183. Still while the Russell case may be somewhat stronger in its facts than the case at bar, it recognized the rule of equitable estoppel heretofore mentioned in the case at bar and applies it to a division wall built solely on the land of a licensor.

In the case of Horr vs. Hollis, 20 Wash. 424, 55 P. 565 it appears that an agreement was made between the parties that if the defendant would refrain for five years to build upon his property, so that plaintiffs might enjoy the light on that side in the meantime, he should have a right thereafter to construct a building upon his lot and make use of the south wall of plaintiff's building as a party wall upon paying therefor one-half of the cost of that wall. Plaintiff sought to repudiate that agreement thereafter and the court said upon that subject: "Another contention is that the agreement to make the wall a party wall is within the statute of frauds, and consequently void. Conceding, as a general rule, that an interest in land can only be created by deed, an exception exists in the case of a party-wall agreement which has been executed, or when there has been such a part performance of the agreement as will estop the parties from denying the existence of the easement. Boone, Real Prop. § 145; Jones, Easem. § 642; Rawson v. Bell, 46 Ga. 19; Rindge v. Baker, 57 N. Y. 209. The difference between holding that a verbal license to enjoy a privilege on the land of another is revocable at the will of the licensor, and holding that a parol agreement fully executed, under which a party wall has been built, creates an easement which runs with the land and cannot be revoked, is what distinguishes the case of Hathaway v. Power Co., 14 Wash. 469, 44 Pac. 896, from

the present case, and the distinction rests upon a very firm foundation."

The Horr vs. Hollis case, supra, refers to a Georgia case. A syllabus in that case states as follows: "If a parol agreement, in relation to the building of a party wall, has been fully executed by both parties, it creates an easement which attaches to and runs with the land." The Horr case also refers to Rindge vs. Baker, supra. Dwight, one of the Commissioners of Appeals, stated in part as follows: "At law a parol license, owing to the statute of frauds, is revocable at the pleasure of the licensor, notwithstanding the expenditure of money on his land by the licensee. The cases on this subject are so numerous and so uniform that it would be a waste of time to refer to them. In equity the rule is quite different. As a court of equity will take a parol contract for the sale of lands out of the statute of frauds, when it is partly performed, it will, on the same principle, treat an executed parol contract for an easement as equivalent to a grant under seal, where the parties cannot be restored to their original position."

In the case of Bank vs. Thomas (Cal.) 41 P. 462 it appears that plaintiff owned a bank building. Defendant wanted to construct a building next to it and asked the bank for the use of the adjoining wall of the bank building for the support of one of defendant's walls. It appears that the directors of the bank at least informally consented that the use asked by the defendant could be made. The defendant, with the consent of the bank, caused a doorway to be opened through the wall adjoining the defendant's building and afterwards to save extra insurance placed an iron door therein. The bank subsequently repudiated its consent. The court holding that the defendant acquired an easement in the property stated as follows: "Under the circumstances shown, we think the plaintiff should be held estopped

from claiming that defendants have no right to use the wall as a party wall, and that its remedy, if any it had, was an action to recover from defendants their just proportion of the cost of the materials and labor used in the construction of the wall. And, in support of this view, see Zeininger v. Schnitzler, 48 Kan. 63, 65, 28 Pac. 1007." Jones on Easements, page 524, taking the case as laying down a general rule of law states as follows: "Where one has verbally consented to the use of a wall of his building as a party-wall by the owner of the adjoining land, and the latter has used the wall relying upon such consent, the owner of the wall is estopped by such consent to enjoin such other party from using the wall as a party-wall. If the owner of the wall has any remedy under the circumstances of the consent given, it is an action to recover a proportionate part of the cost of the wall." As shedding light on the question before us, and in general sustaining the foregoing cases, see also Hall vs. Geyer, 14 Ohio C. C. R. 229, 235, Daugherty vs. Toomey, 189 Tenn. 54, 222 S.W. 2d 197, Brown vs. McKee, 2 N. Y. City R. 320, Wickersham vs. Orr, 9 Iowa 253, 260, Allison vs. Schweitzer, 144 Ark. 123.

An interesting case is Cherry vs. Brizzolara, 89 Ark. 309, 116 S.W. 668, 21 L.R.A. N.S. 508. In that case appellant sold some property to the appellee retaining some adjoining property. He claimed that the description of the land conveyed to the appellee was wrong and should be reformed. As an alternative he asked that even if the deed were not reformed the north wall situated between the property conveyed and the property retained should be held to be a party wall and that appellant should be held to have an easement therein. The court refused the reformation of the deed and also held that the appellant had no easement in the wall above mentioned. Then the court proceeds further, stating as

follows: "But in his cross-complaint the appellee asks for an injunction against appellant restraining him, amongst other things, from asserting any use whatever to said wall or to any part thereof, on the ground that such use causes appellee an irreparable injury. Appellee is hereby seeking affirmative relief. In working out its remedies a court of equity should mold the same so that they will not result in an inequity to either party, and will not be inconsistent with the legal rights of either party. In order to determine whether it would be equitable to enjoin appellant from the present use of said wall in its present condition, it is necessary to consider the situation and condition of the property at the time of the conveyance, the attitude and conduct of the parties relative thereto then and since, and the condition thereof at the institution of this suit. When the appellee purchased the property this wall was used to support the house situated on the adjoining lot retained by appellant. This was apparent to appellee, and by his silence he acquiesced in such use. Continuously for five years thereafter, and up to the time of the institution of this suit, appellee in the same manner acquiesced in the same use of said wall, and immediately before the institution of this suit appellee agreed to lease to appellant the said use of the wall for the nominal sum of $1 per annum. Thus by his conduct and attitude toward the use of said wall he has permitted a condition to exist and continue relative to the use of said wall by appellant which should not be changed or abridged until there shall arise an actual change in the condition of said wall by substantial alterations in good faith or destruction thereof by appellee, or until appellee shall actually and in good faith intend and determine to substantially change, alter, or tear down said wall. The appellee should have and does have the full right to substantially change and alter said wall by building to or tearing down, but, until that is actually

done or actually and in good faith determined to be done by appellee, the appellant should retain the present and temporary use he has of said wall, and retain such use as long as the wall is permitted by appellee to remain in its present condition and to the extent only that he is now using the same."

We pass then to the second proposition and contention of the defendants. The substance of that is stated by its counsel as follows: "We are unable to see where they (the plaintiffs) have expended anything on the strength of the license; but, on the contrary, they have *saved* money by the use of defendant's wall. It saved them the cost of building one brick wall. The use they made of the garage wall certainly did not increase the cost of their building in any way. It did save them the cost of one wall, and without any compensation whatever to the defendant corporation, the owner of the garage wall." It can hardly be said that the contention is without force, although we regret that counsel have not cited us to any illustrative cases, and we have not found, after an exhaustive and independent investigation, that the solution is easy. It is said in 33 Am. Juris. 404, Sec. 99 that: "The well-settled doctrine of the common law is that a mere license, whether by deed or parol, is revocable at the pleasure of the licensor, unless coupled with an interest, or grant; or unless it is *executed; or*, according to the rule in many jurisdictions, unless, by reason of expenditures made by the licensee on the strength of the license, it would otherwise be inequitable to permit the licensor to effect a revocation." (Italics supplied). Here apparently are stated two alternatives which prevent the revocation, namely, first, when the license is executed and, second, when expenditures are made on the strength of the license. We cannot be sure of the intention of the text, insofar at least as a case like that at bar is concerned.

There are some cases in which the license might be said to be executed, but in connection with which no expenditures were made. See for instance Butz vs. Richland Township, 28 S. D. 442, 134 N.W. 895, Howes vs. Barmon, 11 Ida. 64, 81 P. 48, 69 L.R.A. 568. The general rule in such cases seems to be that the license is revocable, at least when no consideration for it was given. See 53 C. J. S. 819, Sec. 91. It is stated in 53 C. J. S. 817 that: "in some of these jurisdictions it has been held that, even thuuugh the license is executed, it is not irrevocable where the licensee has made no expenditure on the faith of the license, or would suffer no substantial loss by its revocation, and no fraud has been inflicted on him." We have examined the cases cited and those in 37 C. J. 293. The facts in the cases cited are not closely akin to the facts in the case at bar. In the case before us the license was fully executed. The execution was impossible without the expenditures of at least some labor and money. So the question arises as to whether or not the expenditures were such as to justify the court in declaring that a right in the nature of an easement was created; that is to say, whether or not in the language of this court in a former opinion, the license has ripened into an easement. Some of the cases speak of, and perhaps require, the expenditure of a large amount of money or labor to effect that result. See text in 33 Am. Juris. 408 already quoted, Curtis vs. Water Co., 20 Ore. 34, 23 P. 808. Judging from other cases, however, there seems to be no general rule as to the amount of expenditures required. Thus it is said in Le Fevre vs. Le Fevre 4 Serg. & Rawle, 241: "A parol license may be revoked, but if it has been acted upon and the party put to expense, it cannot be recalled, and the party made a wrong-doer." In the Washington case of Horr vs. Hollis heretofore reviewed, no expenditures were made on the strength of the license, although the licensee waited five years before he constructed his

building according to agreement. And this may be construed as a consideration given to the licensor. In the California case of Bank vs. Thomas heretofore reviewed, the licensee made no expenditures of money or labor beyond that of anchoring his building to that of the bank, except the construction of an iron door, the expenditure in connection with which must have been comparatively small. Jones on Easements, page 524, also heretofore mentioned, ignores the expenditure of money entirely (aside from that necessary in anchoring the building). In the Arkansas case of Cherry vs. Brizzolara also heretofore reviewed, there was no expenditure of money or labor whatever. In the case of Joel vs. Theatres, Inc., 193 Ga. 531, 19 S.E. 2d 730, the court, in passing, and incidentally, considered a license of 1888, and seems to think that under the rule here under consideration, the expenditures made in anchoring one building to another is sufficient to prevent the revocation of a license saying: "and there can be no doubt that in making the connection with the wall Morris incurred expense, and that harm would have resulted to him had the license thereafter been revoked." Hence, it would seem that the criterion as to whether a license such as here involved should be revocable, is as to whether or not, considering all the facts and circumstances, it would be unjust and equivalent to a fraud to permit the revocation.

In the case at bar the plaintiffs erected a brick building costing $25,000. But counsel for defendant are undoubtedly correct in contending that that amount cannot be considered as the amount expended on the strength of the license here involved in the absence of evidence to that effect, and no such evidence appears in the record. The only labor and money which can be considered to have been expended on the faith of the license is that expended in anchoring the building of

plaintiffs to that of the defendant. The amount thereof does not appear, and counsel for the defendants contend that this should have been shown and the court should have made a finding thereon as requested. We should have been more satisfied if such showing had been made. But as stated in the Georgia case last cited, plaintiffs undoubtedly incurred expense and we doubt, judging from experience, that we can say that the amount was trifling. In any event, that is not the only factor to be considered herein. We think we may take judicial notice herein of the fact that the cost of building a wall of a brick building of two stories in height would be considerable. We think we may also take judicial notice of the fact that to build such a wall now, the cost would be twice, perhaps three times, of that which would have been the cost in 1936. Thus the detriment which plaintiffs would incur by the revocation of the license involved in this case would be large, the plaintiffs could not be put in statu quo, and it would, we think, be unjust to revoke the license now, and it should not be permitted as long as conditions remain substantially as they are now.

One point remains: The court made the temporary injunction, theretofore issued in the case perpetual. Such order doubtless is proper in many cases or would, at least, be harmless. The term "perpetual" is one of infinite duration. The wall in question is now approximately 65 years of age. The law of decay is inexorable. Nothing can escape it. Sooner or later the time will come, perhaps at a period not too remote, when the wall will be so deteriorated as to require attention. It would be wrong to make no mention whatever of the rights of the parties in such contingency. That would merely accumulate trouble for the future. This court should take the course suggested in Cherry vs. Brizzolara, supra. Plaintiffs paid nothing for the use of the wall.

So we think it equitable that if it becomes necessary or advisable, in the opinion and at the option of the defendant, or its successors in interest, acting in good faith, to repair the wall, plaintiffs or their successors in interest, should pay half the cost thereof, at the peril of losing the right here in question.

Furthermore, it is said in 69 C. J. S. 8: "The easement of support of adjoining buildings by the party wall ordinarily ceases when the wall ceases to exist, or is accidentally destroyed, or has been made unfit for its purpose by accident or age, or has become so decayed as to require rebuilding from the foundation." We think that this rule applies in this case. We see no good reason to the contrary. Defendant or its successors must, of course, act in good faith.

Modified as herein mentioned, the judgment herein is affirmed. The respective parties should pay their own costs in this court and no costs should be taxed for the briefs.

*Affirmed as modified.*

KIMBALL, C. J., and RINER, J., concur.